JUNE T., INC., Appellant,
v.
Arnold Ray KING, Appellee.

No. 18630.

United States Court of Appeals
Fifth Circuit.

May 2, 1961.

Linwood N. Anderson, Miami, Fla., Gay, Henderson & Anderson, Miami, Fla., and Russell C. Gay, Miami, Fla., of counsel, for appellant.

Jacob Rassner, New York City, Norman Miller, Miami, Fla., for appellee.

Before RIVES, BROWN and WISDOM, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

In this appeal from an adverse judgment in favor of a seaman for serious personal injuries, the Owner asserts that the evidence was insufficient to support findings of unseaworthiness and damages. Whether consciously or not, the appeal is really something different. It is another instance in which the real complaint is that the Judge did not decide as he ought, therefore we should. But this disregards the nature of a trial, the function of the trial judge and the very limited function of the appellate court. Ohio Barge Line, Inc. v. Oil Transport Co., 5 Cir., 1960, 280 F.2d 448, 449; Williams v. National Surety Corp., 5 Cir., 1958, 257 F.2d 771, 773; Oly Finlayson-Forssa A/B v. Pan Atlantic S. S. Corp., 5 Cir., 1958, 259 F.2d 11, 13, 1958 A.M.C. 2070.

The case was a simple one. It began as a Civil Complaint in two main counts, one on negligence under the Jones Act, 46 U.S.C.A. § 688, and the other on breach of the general maritime duty of seaworthiness. Trial started and continued for a substantial time before a jury. Subsequently in the course of trial, the jury was waived and the Judge proceeded with the hearing. Shortly thereafter the plaintiff voluntarily dismissed the count for Jones Act negligence to rely exclusively on the count for unseaworthiness.

Little need be said of the occurrence. The vessel June T., a shrimper, was hauling in a net. The Master was at the wheel. King, the only other crew member, was on the deck. The vessel was dragging. King was operating the winch bringing in the single net with a catch of shrimp. The net towing cables (wire ropes) ran through two separate blocks at the end of the single outrigger on the starboard side and then down onto two separate drums on the winch. King was on the starboard side of the deck. The levers to start or stop the winches (run by a power take-off on the main diesel engine) were on the port side. He observed that as the net towing cables were coming in, they were piling up near the ends of the two winch drums. He attributed this to the bent condition of the outrigger. But whatever its cause, to overcome it and to assure that the cables would lay evenly on the drums, he would use his hands to push the wire ropes as they were being hauled in. The cotton glove on his left hand caught in a burr on the wire rope. Since he could not get over to the port side to stop the winch he was dragged into the drum and three fingers were pinched off by the cable.

The Judge found that the vessel was unseaworthy because of burrs on the cable, a failure to have some suitable blocks to guide the cables as they paid in on the drums, and insufficient crew. We may disregard the first two for we think the last was amply supported and alone is sufficient to uphold the judgment.

The position of the Owner is difficult to comprehend on this score. True the Master testified that for a shrimper of this size a two-man crew was usual and customary. But there are at least two factors that make that something less than the compelling lack of legal evidence requiring a directed verdict as a matter of law. Marsh v. Illinois Central R. Co., 5 Cir., 1949, 175 F. 2d 498; Commercial Credit Corp. v. Pepper, 5 Cir., 1951, 187 F.2d 71. The first is the everyday problem of credibility, The Master was an interested witness

and the only non-lawyer spokesman for the Owner at the trial.[1] The trial judge was not required to credit this and for reasons shortly stated, there was good basis for rejecting it out of hand. The second factor is the standard of care. What is customary in a trade may be evidence of due care—here the reasonable fitness element on the concept of seaworthiness—but it is not the legal measure of the duty. The T. J. Hooper, 2 Cir., 1932, 60 F.2d 737, 1932 A.M.C. 1175; Troupe v. Chicago, Duluth & Georgian Bay Transit Co., 2 Cir., 1956, 234 F.2d 253, 260, 1956 A.M.C. 1367; Universe Tankships, Inc. v. Pyrate Tank Cleaners, Inc., D.C.S.D.N.Y.1957, 152 F. Supp. 903, 918, 1957 A.M.C. 1436; 38 Am.Jur., Negligence, § 34; Schlichter v. Port Arthur Towing Co., 5 Cir., 1961, 288 F.2d 801.

 The record justified the Court in rejecting the legal contention of sufficiency of the crew on several grounds. First, the verbal testimony of the Master that a two-man crew was customary was in the teeth of the actual practice of this very ship. When she left port the day before the accident, she had a third man aboard as a member of the crew who was expected to perform as such. He was unable to work because of intense intoxication at the time he came aboard. This shortly led to acute illness requiring that he be airlifted by a Coast Guard helicopter. Actions, under these circumstances, do come in louder and clearer than what was said. Next, the plaintiff, an experienced hand on shrimpers who had served on them in all capacities, including Master, was emphatic that the custom and practice called for a three, not two, man crew. Finally, the Judge, certainly as much as could a jury, was permitted to bring to bear on this record the general experience of men in appraising what the evidence reflected in terms

1. While the matter is not directly presented, the examination of the Master, called to the witness stand by the plaintiff, hardly makes the plaintiff "bound" by all he said as the Owner somewhat obliquely contends. The Trial Court did not rule precisely, nor are we called on to do so as such, on whether the Master was a "Managing Agent" under F.R.Civ.P. 43 (b), see also (26(d) (2), 28 U.S.C.A. Some of the Judge's rulings were restrictive, others approached permitting cross examination by the plaintiff. A ship master certainly meets the determinative standards set out in Newark Ins. Co. v. Sartain, D.C.N.D.Cal.1957, 20 F.R.D. 583, 586, of one who "1. Acts with superior authority and is invested with general powers to exercise his judgment and discretion in dealing with his principal's affairs * * * 2. Can be depended upon to carry out his principal's directions to give testimony at the demand of a party engaged in litigation with his principal; and 3. Can be expected to identify himself with the interests of his principal rather than those of the other party." Element No. 3 was regarded as a probable factor of relevance in Pan-American Casualty Co. v. Reed, 5 Cir., 1957, 240 F. 2d 336, 340 in applying the principle announced in Maryland Casualty Co. v. Kador, 5 Cir., 1955, 225 F.2d 120. Many cases cited in Newark indicate that the managing agent relates to management of the field of activity concerned in the litigation.

A ship master by necessity and legal tradition is, of course, one having transcendent powers as an agent. See United Geophysical Co. v. Vela, 5 Cir., 1956, 231 F.2d 816, 819, 1956 AMC 745; Ionion S. S. Co. of Athens v. United Distillers of America, Inc., 5 Cir., 1956, 236 F.2d 78, 82. He has a duty not to sail unless the ship is seaworthy. Once she is underway he is, and must be, the sole commander. With respect to the injuries occurring aboard, especially at sea, he is the topmost authority in the hierarchy of management. A Master likewise satisfies the element of being a partisan for his ship. This testimonial disposition of seafarers is notorious. Ohio Barge Line, Inc. v. Oil Transport Co., 5 Cir., 1960, 280 F. 2d 448, 451. These unique circumstances suggest a status for a vessel master quite different from a crew chief on a land-based activity. So Dowell, Inc. v. Jowers, 5 Cir., 1950, 182 F.2d 576, does not necessarily foreclose the matter.

In any event the Trial Court has considerable discretion in allowing such examination under 43(b). Consequently, the plaintiff's case is not to suffer from the Court's action in rejecting so much of the Master's testimony as might be contrary to the Judge's conclusions as this was quite within the province of the Court.

of requirements prudently needed for reasonably safe operations. The facts on this were clear. The Master at the wheel was of no help unless, of course, he left the wheel and committed navigation to an automatic pilot. Conducting the operations with a single crewmember, the seaman hauling in nets from the starboard side could not be both on the starboard side as occasion demanded and on the port side to stop the winches if trouble arose. The fact finder had a rational basis for concluding that for the operations contemplated, there was more for one man to do than was reasonably prudent. Of course, to be inadequately or improperly manned is a classic case of an unseaworthy vessel. See Boudoin v. Lykes Bros. S. S. Co., Inc., 1955, 348 U.S. 336, 75 S.Ct. 382, 99 L.Ed. 354, 1955 A.M.C. 488.

■■ There can be no real objection that this finding was on an issue not in the case. The pretrial order, after specifying that the contested particulars of unseaworthiness were defective outriggers, lack of cable guides, the existence of burred cables, ended in a catchall charge that "the vessel was otherwise unseaworthy." More important, in the very early stages of the trial, testimony was received without objection showing that a three-man crew was usual and customary on similar vessels. Subsequent to a later interlude in which the Trial Court kept from the jury some specific evidence on where such a three-man crew would be deployed in performing a like operation, the issue was again opened up fully. Both sides were afforded, and utilized, the opportunity of offering evidence pro and con on this matter. In refutation of this claim, the Owner seemed content to rely altogether on the Master as its voice. The Judge quite obviously did not choose to credit his testimony. There can be no suggestion here of surprise or unfair advantage or any inability to meet adequately a new issue. There was therefore an implied amendment to the complaint, F.R.Civ.P. 15(b).

■ The contention of contributory negligence as a matter of law fails for like reasons. It rests on the assertion that the Master had given repeated orders not to touch the towing cable by hand while hauling in on the winch. Besides other aspects of the Master's testimony casting doubt on his general credibility, the Judge heard him acknowledge that while the practice was dangerous, nearly all seamen did it. The Judge likewise credited the plaintiff's testimony that the cable was piling up on the winch drums and that some action was necessary. The action taken by him certainly could not be held as a matter of law to have been the sole cause. Donovan v. Esso Shipping Co., 3 Cir., 1958, 259 F.2d 65, 66–67, 1958 A.M.C. 2096. To the extent that it was contributory, this would merely reduce the damage award. Cox v. Esso Shipping Co., 5 Cir., 1957, 247 F.2d 629, 636, 1957 A.M.C. 1927. Here the damage award, just as might have been a general verdict of a jury, was in a lump sum for all phases.

■ The only remaining contention requiring some notice is that the amount of the damages awarded was excessive. The Court found that " * * * the plaintiff has suffered pain, embarrassment, a loss of wages and earning capacity as a direct result of the unseaworthiness of the * * * vessel." On that he concluded that the total damages "reduced to present value are $21,000." This accident, the Judge said, "traumatically amputated the second, third and fourth fingers of his left hand." The element of pain was therefore most significant. For the five hours from the time of the occurrence until King was picked up by Coast Guard for transfer to a hospital ashore, there was no medication or sedation of any kind whatsoever available aboard the vessel. During this time the plaintiff to use the Master's own words, "was crazy with pain." If lack of medical supplies aggravated pain, as it undoubtedly did, the Owner can hardly complain of this consequence of patent unseaworthiness. Subsequent to initial

discharge from the hospital and after a number of months of experience in which efforts to work continued to cause pain in the surgical stumps, the doctors concluded that the remaining portions of the three fingers should be entirely removed. This was done. Whatever might be the precise facts as to the actual earnings for the three months of August, September and October 1957—so vigorously attacked by the Owner—there was ample basis for concluding that substantial earnings had been lost down to the date of trial and that earning capacity was markedly reduced as to the future. Lumped together as it was, we could not say that this award for painful, disabling injuries caused by unseaworthiness was clearly erroneous. Whiteman v. Pitrie, 5 Cir., 1955, 220 F.2d 914.

Affirmed.