**GULF COAST TRAWLERS, INC.,**
Libellant,

v.

**RESOLUTE INSURANCE COMPANY**
et al., Respondents.

No. 64-B-1.

United States District Court
S. D. Texas,
Brownsville Division.
March 19, 1965.

Cox & Wilson and Tom Clendenin, Jr., Brownsville, Tex., for libellant.

Cunningham, Yznaga & Duncan and David Duncan, Brownsville, Tex., for respondents.

GARZA, District Judge.

This is an action brought by a shipowner against the insurer to recover for loss of his shrimping vessel, the O/S JOYCE MARIE which was insured under an American Institute Time Hull Policy containing an Inchmaree clause.

Libellant alleges that the O/S JOYCE MARIE was lost on a fishing voyage in the Gulf of Mexico on November 5, 1963, and that at the time of such loss said vessel was in all respects seaworthy and said loss was a result of the perils insured against.

Respondents Resolute Insurance Company and Lloyd's Underwriters and/or Institute of London Companies contend, on the other hand, that the vessel at the time of the loss was unseaworthy because of the fact that it only had on board a 2-man crew including the captain, and that it had a defective, improperly maintained or repaired clutch, rendering the said vessel unseaworthy; and that the sinking of the vessel was contributed to or proximately caused by such unseaworthy conditions. Respondents also strongly hint that the O/S JOYCE MARIE was intentionally sunk by the owner or those in privity with said owner.

The Court heard evidence for two days, and then the parties were allowed to present briefs, which they have done.

From the facts before me, I find that Gulf Coast Trawlers, Inc., was the owner of the O/S JOYCE MARIE, Official No. 253,878; and that James Earl Wade is President and Managing Agent of Gulf Coast Trawlers, Inc., which not only operated the O/S JOYCE MARIE, but other similar shrimping vessels.

Respondents Resolute Insurance Company and Lloyd's Underwriters and/or Institute of London Companies insured the owner of the O/S JOYCE MARIE against certain risks enumerated in Policy No. JP26263A, and there is no dispute about the identity of the policy, that premiums had been paid, that the sinking occurred during the policy period, or that the Court has jurisdiction and venue over the parties and the subject-matter.

The O/S JOYCE MARIE left its berth at the Port of Brownsville Shrimp Basin the day before it sank, and James Earl Wade saw it leave. The JOYCE MARIE had been having trouble with a defective clutch which had been "slipping," but the same had been repaired before it left the Port of Brownsville. On the way out to the fishing grounds, the captain noted that the clutch was still giving them trouble, and he put in to port at Port Mansfield near Raymondville, Texas, some 30 to 40 miles up the coast from Brownsville, and the captain proceeded to call the owner's President and Managing Agent, James Earl Wade, who proceeded to Port Mansfield, and who testified that he adjusted the clutch linkage and repaired what had been causing the trouble.

The JOYCE MARIE then left Port Mansfield and went out to the fishing grounds, and when they were about three hours away from Port Mansfield, she rendezvoused with the O/S LADY MEL, another boat owned by Libellant, tied a line to the stern of the O/S LADY MEL which was at anchor, inspected and secured the vessel, and the captain and the rigman, the only two men on board the ship, went to sleep shortly before noon and slept until 5:30 to 6:00 p. m., when Captain Elmo B. Spencer awakened to find water at the stern deck and the engine room flooded. The 2-man crew of the O/S LADY MEL also had been asleep and awoke after Captain Spencer called them. The O/S JOYCE MARIE had on board in good working order at the time she allegedly sank, four pumps, one pump purchased new on September 13, 1963, and three additional pumps that had been overhauled and rebuilt since the United States Coast Guard had dropped a pump to her in September, 1963.

Captain Spencer testified that the O/S JOYCE MARIE sank in an upright position after he and his other crewman had abandoned it because it was impossible to save it.

A surveyor for Respondents testified that he found no trace of the O/S JOYCE MARIE, not even an oil slick.

It was also brought out during the trial that while the O/S JOYCE MARIE was on its way out of Port Mansfield, it hit or "rubbed against" the South bank of the channel, although Captain Spencer

at first denied having hit anything when a statement was taken from him shortly after the sinking, and he did not reveal the fact of having "rubbed against" or hit the South bank until his deposition was taken some six months later.

A defective clutch which "slips" as the one on the JOYCE MARIE had been "slipping," would adversely affect the ability of the vessel to navigate properly. The forward and reverse gears will not engage properly while the clutch is "slipping" and this may cause the vessel to react sluggishly to the controls.

Respondents urge on the Court that James Earl Wade, the President and Managing Agent of Libellant-Owner, knew that the clutch was bad and still sent the boat out from Port Mansfield; that the clutch was what caused the boat to hit the South bank going out, which, in turn, caused the leak that flooded the JOYCE MARIE, causing it to sink; further, that the Court should not believe James Earl Wade when he says that he had fixed the clutch at Port Mansfield, because his testimony is not worthy of belief in that he lied to the Court in saying that the LADY MEL was in port at Port Mansfield at the same time the O/S JOYCE MARIE was, when the records of the port show that the O/S LADY MEL was never there on that occasion, and because of other discrepancies in his testimony.

■■ Even if this be so, this is no consolation to Respondents, for negligence of the assured or its agent is no defense to a marine policy; and under the facts I find that, if anything, James Earl Wade was negligent in allowing the O/S JOYCE MARIE to sail with a clutch that he believed to have been repaired. Further, there is no evidence before me that the hitting or the "rubbing against" the South bank of the channel at Port Mansfield was caused by the fault of the clutch, since it is just as plausible that it could have happened through the negligence of the captain, which, under the Inchmaree clause, would still make the insurer liable.

I cannot find, therefore, as urged by Respondents, that the owner of the O/S JOYCE MARIE allowed it to sail in an unseaworthy condition because of a defective clutch, or that the defective clutch, if in fact it had one, was the proximate cause of the sinking.

■ We now go to the question of the boat being unseaworthy because of carrying only a 2-man crew.

There is no question that the O/S JOYCE MARIE was manned by only a 2-man crew, and that the owner knew of this condition.

Respondents urge on the Court the following cases where shrimp vessels, such as the O/S JOYCE MARIE, have been declared unseaworthy where they were carrying only 2-man crews:

June T, Inc. v. King, 290 F.2d 404, 5th Cir., 1961; Smith v. Seitter, 225 F. Supp. 282, E.D., N.C., 1946; and The Key v. Trigge and the O/S Valley King, which was tried by the Honorable John R. Brown, sitting by designation in the Southern District of Texas, Brownsville Division, in June, 1960, which is an unpublished opinion.

All of the above cases cited to the Court were personal injury actions. Each of these cases deals with a seaman performing some function which the court said he should not have been doing alone; and the Court is in accord with the rulings in those cases.

Respondents urge on the Court that if the O/S JOYCE MARIE had had three crewmen on board, the chances of one of them standing watch would have been greater and that the leaking could have been discovered, the pumps put to work, and the vessel brought into port and saved.

The evidence before me, however, is that in ninety per cent of shrimping vessels having 3-man crews, the crew always sleeps in the daytime since they fish mostly at night.

If we are to assume that an anchor watch is necessary when boats are tied

up, such as was the O/S JOYCE MARIE, this duty remains whether the boat is 2-manned or 3-manned, and the failure to have a watch is negligence of the master, and that is no consolation to the insurers in this case.

I, therefore, find that a 2-man crew does not make a vessel unseaworthy as a matter of law for all purposes and in all respects. The failure to have a third crew member must be a proximate cause of the act complained of, such as in the personal injury cases cited to the Court.

Under the authority of Saskatchewan Government Insurance Office v. Spot Pack, Inc., 242 F.2d 385, 5th Cir., Mch. 14, 1957; and Tropical Marine Products, Inc. v. Birmingham Fire Insurance Co. of Pa. (The Sea Pack), 5th Cir., Aug. 13, 1957, 247 F.2d 116, I cannot find that the shipowner or anyone in privity with him knew that the O/S JOYCE MARIE was in an allegedly unseaworthy condition, and that therefore they breached the limited warranty of seaworthiness in the American Institute Time Hull Policy containing an Inchmaree clause such as the one that was in effect in this case; and, therefore, since I cannot determine from the evidence what caused the leak which resulted in the sinking and loss of the JOYCE MARIE, the loss was within the coverage of the policy.

Under the facts before me, the owner of the O/S JOYCE MARIE has discharged its responsibility, and the Respondents have not discharged theirs by proving that the owner of the O/S JOYCE MARIE knowingly permitted the same to go to sea in an unseaworthy condition that was the proximate cause of the sinking, nor have they presented any evidence of intentional sinking.

This Memorandum Opinion constitutes the Findings of Fact and Conclusions of Law of this Court.

Libellant will prepare an appropriate decree for entry.