**Harry SAMS, Plaintiff,**

v.

**Robert L. HAINES, Defendant.**

**No. 613.**

United States District Court
S. D. Georgia.

May 15, 1969.

Joseph Bergen, Charles Sparkman, Savannah, Ga., for plaintiff.

Emanual Lewis, Savannah, Ga., for defendant.

## OPINION

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

LAWRENCE, District Judge.

This is a suit in admiralty brought by Harry Sams, a crewman on a shrimp boat, against the owner of the vessel as a result of injuries he received aboard her in 1964. Plaintiff was severely injured when his right hand was caught in a cable while working the shrimp nets on the fishing vessel "Faithful" off Tybee Island on August 18, 1964. The complaint alleges negligence by the owner and unseaworthiness of the vessel. The case was tried before me on April 1, 1969.

The 47-foot shrimp boat owned by Robert L. Haines, defendant, left Laza-retto Creek early on that morning with a crew of two, consisting of the captain and the plaintiff. The vessel was equipped with a double rig for shrimping, that is to say, she could drag a port and a starboard net at the same time. Each net is connected to the vessel by a steel cable running from the net to a dragarm or out-rigger and thence to the winding drum of the winch. The drums are located side by side behind the wheelhouse. Each winch is equipped with a brake pedal operated by foot and also with a manually-operated lever or clutch which places the winch in gear to start the drum revolving.

The testimony of Sams is vague and contradictory in certain respects. Generally, his version was that he and Riley were operating the two winches which control the shrimp nets. Each had hold of one of the levers which operate the drums from which the cable is let out and over which it coils when pulled in. A wind sprang up and the captain went to the wheelhouse to straighten the boat. Riley told Sams to hold his lever. At this point the cable began to pile up on the drum and plaintiff stepped on the foot brake pedal. The pedal had broken off previously and was welded back in place. It had a smooth metal surface and was not braised like the foot pedal used on the outside drum. Sams claimed that when he stepped on the pedal his foot slipped from it. In losing his balance, he fell and his right hand made contact with the cable which was rolling up on the drum.

On cross-examination Sams testified:

Q. Now, isn't the truth of the matter is that you reached your hand in there to straighten your cable and then it grabbed you?

A. The cable grabbed me.

Q. When you put your hand in there?

A. No. I didn't reach my hand in there. The cable is over here. (indicating) You take your hand and push it off when it started rolling up and piling up.

Q. The cable just grabbed your hand?

A. No. It just grabbed me and snatched me around so quick, when I tried to apply the brakes, and it just pulled me round and round and I kept falling, and the cable pulled me right on down, right on down, on my knee.

Q. Now, you got your hand in there before you ever put your foot on the brake, didn't you?

A. Well, that is when I went to stop it.

Q. When you got your hand in there, you put your foot on the brake?

A. I applied the brake and the cable pulled me around, and I couldn't stop it.

Q. Well, which was which? Didn't you have your hand in there and then you put your foot on the brake?

A. I didn't put my hand in the cable, because I knew it would cut you up.

Q. You didn't put your hand there?

A. No. I didn't put my hand in there, because it would cut you up.

Q. Why did you put your foot on the brake?

A. I had my hand on it, shoving it off.

Q. Shoving the cable off?

A. Off.

Q. Shoving it off of what?

A. Keep it from piling up.

Q. You were shoving the cable off to keep it from piling up and then it grabbed you and you put your foot on the brake?

A. That's right.[1]

Captain Ben Riley had been in the shrimping business for thirty years and had been master of the "Faithful" for four years. He had hired Sams a couple of years before. Riley received one-third of the market price of the catch. The other two-thirds of the catch went to the owner. Riley paid Sams 40% of his one-third share.

Captain Riley testified that there was no wind or rough water at the time of the accident and that they were dragging for shrimp at a speed of 4 to 5 miles per hour. The boat started swinging around. He told Sams to hold the hoist and to handle things until he straightened the vessel. He was gone about two minutes. When he returned he saw Sams' hand in the hoister. Plaintiff subsequently informed him that he was "guiding" the cable and that his hand slipped and was caught between the drum and the cable. According to Riley, Sams said nothing about his foot slipping on the brake. In fact, there was no reason for him to apply the brake until the "doors" which weigh down the nets are out of the water.[2] Riley said that sometimes they would use their hands to guide or push the cable on the drums. He admitted that it was a dangerous practice.

Mr. Haines testified that a crew of two is sufficient on a shrimp boat of this type and that he had seldom seen three men on one. He stated that the brake was only used in letting the nets out, not when they are being pulled in. He had never seen a spool guide as part of the equipment on a shrimp boat so as to distribute cable evenly across the circumference of the drum. A witness for plaintiff, James W. Tarver, testified that a winch with a spooling device would be safer. Mr. Tarver also said that safe operation of the two winches required two men.

A witness for defendant, Paul L. Clark, said that the "Faithful" was an "average" shrimp boat with three drum hoists. He said that he advised his "striker" not to put his hand on the cable and that on his vessel they used a stick or pipe to keep the cable even. Captain Clark fur-

---

1. This is the only portion of the record that has been transcribed and, except for here, I am relying on my notes.

2. At another point in his testimony Riley stated that if the cable was piling up on the drum, one would sometimes use the brake. I think, however, he was confused in his understanding of the questions on cross-examination. Defendant contends that the proper way to stop the rotation of the drum was to insert the "dog," or ratchet, in the "slot" between the cogs of the winch.

ther testified that it does not take two men to run the two winches while shrimping. Only when the captain is unfamiliar with the waters are two men hired.

There was testimony that the equipment aboard the "Faithful" was "run down." The broken brake pedal had been welded back in place a year before the accident. Sams testified that it was not properly fastened and that he told Riley it "wasn't much." Mr. Tarver who examined the fishing vessel later said that the brake pedal equipment was "not in the best condition" and called it unsafe.

As a result of his injuries Sams was hospitalized at the Public Health Service Hospital in Savannah for a period of two months. The X rays of the right hand and wrist showed "a traumatic loss of the little finger; fracture across the neck portion of the middle phalanx. There is similar involvement of the ring finger. The fracture lines seen across the distal end of the proximal phalanx, fracture across the base of the terminal phalanx of the thumb." There was also a fracture of the distal end of the ulna, that is, his lower right forearm. On the third day after the injury plaintiff was operated on and the little finger amputated. The phalanges of the third and fourth fingers were pinned. The wires were removed on September 24th following the injury. Sams testified that he had to give up the occupation of shrimping on account of his injuries. According to his testimony, he can move his fingers but has no grip and has no strength in his right arm.

He was unable to go back to work until around November 1, 1964. The testimony as to his pay and earnings before his injury is quite indefinite. He testified that some weeks he earned better than $100. The payroll records of the defendant show that from January to August, 1964 Sams was paid only a total of $1,019.83. After the injury Haines gave him a check for $50. There was no other payment in the form of mainte-

nance. There was no surgical or hospital charge involved.

 Plaintiff contends that the vessel was unseaworthy because of the smooth surface of the brake pedal on the middle drum.[3] I agree that the condition of the pedal and the lack of a grilled surface could be both negligence as well as a factor making the "Faithful" unseaworthy. However, I cannot satisfy myself that there was a causal connection between the slick pedal and the injury. In other words, I am unable to accept at face the testimony of Sams that his foot slipped when he exerted pressure on the pedal and that he lost his balance with the result that his hand was "grabbed" by the cable. His testimony in this respect is at best vague and uncertain. The courtroom version is not in accord with what he told Riley after he was injured. Nor what he told Haines in the hospital. His post-accident statements offer the more likely explanation, I think. The cause of the injury was apparently plaintiff's attempt manually to guide the cable, which was piling up. This was obviously a dangerous procedure.

This finding would be the end of the matter except for the other claim of unseaworthiness of the vessel on the day of the injury. It is that the "Faithful" was insufficiently manned. I realize that shrimp boats in this area are customarily manned by a crew of two—the captain who steers and the helper who operates the winches. Apparently, the custom is, when the nets are being hauled in, for the captain to handle one of the drums and let the vessel steer itself. In fact, the testimony was that it is possible to steer the boat by the manipulation of the nets.

 However, custom does not make seaworthiness. As observed by Judge Brown in the Fifth Circuit case of June T., Inc. v. King, 290 F.2d 404, at 406: "What is customary in a trade may be evidence of due care—here the

---

3. The drum on the port side used was used in the operation of the smaller "try-net," the purpose of which is to see whether the shrimp are running. It was not involved.

reasonable fitness element on the concept of seaworthiness—but it is not the legal measure of the duty." Nor is the fact that a three man crew is economically unfeasible.

Proper standards of safety required two men at the winches when the shrimp nets were being pulled in. Indeed, two crewmen were available for that purpose and were performing such work immediately prior to the injury. But this left no one to steer the vessel, which was not equipped with an automatic pilot, and the "Faithful" began to swing around. It is quite within the realm of possibility that the veering occurred because nobody was at the wheel. Captain Riley left the winching operations to Sams to handle and returned to the pilot house in order to straighten the course of the vessel. At the time of the injury the winches were undermanned. Immediately before the injury they were adequately manned but the pilot house was inadequately manned. If two men had been operating the winches it is possible that the accident would never have happened. The cable might not have bunched up. Sams might have been less careless had another man been present. The emergency under which he was apparently acting might not have presented itself. Of course, if Sams used his hand to guide the cable which was piling up on the drum he was negligent. But I do not find that his carelessness in that respect was the sole proximate cause of his injury. The insufficient crew was a causative factor therein.

Counsel for defendant distinguishes June T., Inc. v. King, *supra*, from the present case. While there are factual differences the decision supports a finding here as to unseaworthiness because of an insufficient number of crewmen. The Fifth Circuit Court of Appeals said in that case:

" * * * the plaintiff, an experienced hand on shrimpers who had served on them in all capacities, including Master, was emphatic that the custom and practice called for a three, not two, man crew. Finally, the Judge,

certainly as much as could a jury, was permitted to bring to bear on this record the general experience of men in appraising what the evidence reflected in terms of requirements prudently needed for reasonably safe operations. The facts on this were clear. The Master at the wheel was of no help unless, of course, he left the wheel and committed navigation to an automatic pilot. Conducting the operations with a single crew member, the seaman hauling in nets from the starboard side could not be both on the starboard side as occasion demanded and on the port side to stop the winches if trouble arose. The fact finder had a rational basis for concluding that for the operations contemplated, there was more for one man to do than was reasonably prudent. Of course, to be inadequately or improperly manned is a classic case of an unseaworthy vessel."

Smith v. Seitter, D.C., 225 F.Supp. 282 involved a fishing vessel engaged in shrimping operations off the South Carolina coast. The facts were somewhat similar to those here. After a sampling catch with the try-net the captain entered the pilot house and gave orders to the other crewman to start the winch. The latter had his toes on the brake pedals. In spite of repeated warnings, he was "spooling, or fleeting, the cable as it reeled in on the forward drum." In turning, the vessel pitched. Smith lost his balance and lurched forward. His right hand was caught by the cable. Awarding damages, District Judge Larkins said:

"For all practical purposes, Captain O'Neal could not perform the duties of a crewman. He was Master at the wheel, which was without an automatic pilot. Smith had to attempt to serve as deck and winch hand both, an impossible task. He was to bring up the try-net, dump it, assort the shrimp, wash away the trash, and run the winch. Without assistance from O'Neal in emptying the try-net and raking away the trash, Smith would have been delayed in running the

winch. Some duties were neglected so that more important ones could be performed. *There was too much work here for one crew member to handle."*

The words I italicized are equally applicable here.

■■ Contributory negligence is no bar to a recovery by Sams. It only serves to reduce the compensation awarded. The facts do not compel a finding that the acts of plaintiff were as a matter of law the sole cause of his injury. See June T., Inc. v. King, *supra*, 290 F.2d at 407. I find that Sams was fifty (50%) percent at fault. His negligence and the lack of a sufficient crew for the work at hand concurred in proximately producing the injury.

It remains for me to fix the amount of damages to be awarded for the injuries to Sams. He sues for pain and suffering, past, present and future; for his disablement from performing his usual occupation, loss of earnings, and for maintenance and cure. There is no reliable testimony upon which I can base or make any finding as to diminished earning capacity. Since the time Sams went back to work in the fall of 1964 he has apparently not monetarily suffered because of the disability to his right hand. His injury was severe but he has fair use of his hand and arm.

■ I fix the damages, apart from maintenance, in the total amount of $12,000.00. Applying the comparative negligence rule in admiralty cases that amount is subject to a 50% reduction. Damages are awarded in the amount of $6,000.00 for the injury to plaintiff's hand and arm and for any other injuries received.

■■ Plaintiff is entitled to recovery of maintenance from the date of the injury to around November 1, 1964, a period of about 10 weeks. I find the reasonable value of maintenance to be $40.00 per week. Defendant has a credit against his obligation in this respect in the amount of $50.00. Judgment is rendered in favor of plaintiff for $350.00 as maintenance. There was no proof as to the attorneys fees claimed in this connection. The defendant failed to provide maintenance and should have done so. However, there is no evidence of any demand for same and under the circumstances, I do not find present the element of callousness or recalcitrance in withholding maintenance which is sufficient to support an allowance of attorneys fees. See Roberts v. S. S. Argentina, 2 Cir., 359 F.2d 430.

The foregoing opinion contains adequate Findings of Fact and Conclusions of Law. However, for form's sake, I make the following formal findings and rulings of law:

## FINDINGS OF FACT

1. Plaintiff received the injuries described above aboard the fishing vessel "Faithful" while engaged in shrimping operations off Tybee Island on August 18, 1964.

2. The shrimp boat was owned by Robert L. Haines, the defendant.

3. Plaintiff was a member of the crew and was an employee of Haines. He was not the employee of the Captain of the "Faithful."

4. At the time of his injury an insufficient number of seamen were available for safe operation of the two winches. The vessel was unseaworthy in that respect.

5. If two crewmen had manned the winches plaintiff might not have been injured. The vessel might not have veered off course if there had been a pilot at the wheel. An emergency might not have presented itself as far as Sams was concerned if there had been a crew of three.

6. The necessity of the Captain returning to the wheelhouse to straighten the fishing vessel, which lacked an automatic pilot, was a proximate cause of the injuries.

7. The "Faithful" was unseaworthy in that the brake pedal on the middle-drum had a smooth, unbraised metal surface. However, that fact was not proximately connected with the injury

and was not a cause thereof. The injury did not occur in the manner claimed by plaintiff.

8. Plaintiff was negligent in manually attempting to guide or push the cable which had "bunched up" on the drum.

9. Sams' negligence in that respect concurred with the insufficient crew. Together they constituted the proximate cause of plaintiff's injuries.

10. The negligence of plaintiff is chargeable against the award of damages to the extent of fifty (50%) percent.

## CONCLUSIONS OF LAW

1. This case is within the admiralty jurisdiction.

2. Contributory negligence by a seaman is not a bar to a recovery when the vessel is unseaworthy and merely reduces the amount of damages to which he is entitled.

3. To be inadequately manned renders a vessel unseaworthy.

4. While custom in the shrimping industry apparently sanctions the use of a crew of two that fact is not conclusive in determining the number of men necessary for the safe operation of the vessel.

5. The damages for pain and suffering, past, present and future, and for disfigurement, disability, and all other elements of damage (except loss of maintenance) is fixed at $12,000. Plaintiff is not entitled to damages for diminished earning capacity.

6. Reduced by the comparative negligence rule as applied in admiralty cases, the award to plaintiff for his injuries amounts to $6,000.

7. Plaintiff is entitled to $350.00 for maintenance. The expense of cure is not involved. Attorneys fees to plaintiff are denied.

8. Judgment against defendant is rendered in accordance with the above findings.

9. Costs of court go against the defendant.