**Pascual PEREZ et al., Appellants,**

v.

**LOS FRESNOS STATE BANK, Appellee.**

**No. 871.**

Court of Civil Appeals of Texas, Corpus Christi.

June 20, 1974.

Benjamin S. Hardy, Hardy, Sharpe & Rodriguez, John W. Black, III, Cox, Wilson, Duncan & Black, Brownsville, for appellants.

Harry D. Lewis, Wiech, Lewis & Gann, Brownsville, Richard D. Davis, Johnson & Davis, Harlingen, for appellee.

## OPINION

BISSETT, Justice.

This is a suit on a marine insurance policy to recover the value of a boat that was totally destroyed by fire.

Pascual Perez, the insured boat-owner, sued Interstate Insurance Company and Breedlove Insurance Agency to recover the full amount of the policy issued by the insurer on a boat owned by him. Los Fresnos State Bank of Los Fresnos, Texas, which held a mortgage on the boat, intervened under an endorsement to the policy which protected its interest as a mortgagee.

At the conclusion of a jury trial, judgment was rendered that Los Fresnos State Bank (Bank) recover $4,600.00 from Interstate Insurance Company (Interstate) and $1,000.00 from Pascual Perez (Perez) and that Perez recover nothing from either of the defendants. Perez has duly perfected an appeal to this Court from that portion of the judgment rendered in favor of Interstate against him. Interstate gave timely notice of appeal from that portion of the judgment which awarded $4,600.00 to the Bank, filed a cost bond within the prescribed time, but did not file the record in this Court. Its appeal must be dismissed.

The principal facts are undisputed. In May, 1967, Perez purchased the wooden hull shrimp boat "San Martin". The purchase price was financed through the Bank and was secured by a mortgage on the vessel. The note was renewed from time to time. At the time judgment was rendered, $5,600.00 was due thereon.

In the late afternoon of June 17, 1971, the "San Martin" left Port Isabel for the purpose of fishing in the Gulf of Mexico off Port Aransas. The vessel was manned by Perez and his 17 year old son, Patricio. On that day, while running north up the Texas Coast toward the fishing grounds, the elder Perez saw smoke coming from the engine room hatch. A fire had broken out below deck. Perez and his son attempted to fight the fire with extinguishers. A Coast Guard ship in the vicinity came to the aid of the burning boat. The Coast Guard vessel was equipped with a built-in fire fighting system which the crew used in an attempt to control the fire. It was impossible, due to the small size of the engine room compartment where the fire started, for more than one or two men to fight the fire. Despite the assistance by the crew of the Coast Guard ship, the fire could not be controlled and the boat was totally destroyed.

The "San Martin", on the date of its destruction by the fire, was covered by a standard marine insurance policy for $20,000.00 less $1,000.00 deductible, which had been issued by Interstate and sold to Perez through the Breedlove Insurance Agency. The policy included hull coverage, and attached thereto were several

"special endorsements", one of which read as follows:

"WARRANTED NO COVERAGE IF OPERATING AND/OR FISHING WITH LESS THAN THREE (3) MEN (MOVING BETWEEN DOCKS, ETC. WITHIN CONFINES OF ONE PORT NOT TO BE CONSIDERED OPERATING)."

On the strengh of this endorsement, Interstate denied Perez' claim for the total loss of his boat.

The jury, among other findings, found: "the fact that there were only two (2) men aboard the vessel at the time and on the occasion in question" was not a proximate cause of the loss by fire of the vessel (Special Issue 6); and "on June 17, 1971, when the San Martin left Port Isabel, Texas", it was not "unseaworthy" (Special Issue 9).

Perez, in his points of error 1 and 2, asserts that the trial court, in rendering judgment in favor of Interstate and against him, committed reversible error in disregarding the jury's findings in response to Special Issues 6 and 9.[1] The basic question presented by this appeal is, under what law is the "3-man clause" of the policy to be construed, Federal admiralty law or Texas law?

The leading case on this question is Wilburn Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955). In that case a policy of insurance was issued on a small houseboat which was used for carrying passengers on Lake Texoma. The policy contained warranties that the insurance became void if the boat was sold, assigned, transferred, pledged or used for hire without consent of the insurer. The boat burned and the insurance company refused to pay for the loss on the grounds that the warranties had been breached. The Wilburns brought suit in a Texas state court and claimed that under Art. 6.14 of the Texas Insurance Code, V. A.T.S. the breach by the insured of the provisions of a fire insurance policy cannot be used as a defense by the insurer unless the breach contributes to the loss. After removal, a federal district court rendered judgment for the insurance company, which was affirmed on appeal. (See 5 Cir., 201 F.2d 833). The United States Supreme Court reversed the lower courts and remanded the case with directions to give effect to the Texas statutes. The Court recognized that although there is federal jurisdiction over the area of marine insurance, it did not follow that every term in every maritime contract could only be controlled by some federally defined admiralty rule. It was noted that the control of all types of insurance companies and insurance contracts had been primarily a state function "since the States came into being". Mr. Justice Black, in writing the majority opinion, warned against the creation by the federal courts of admiralty rules to govern marine insurance policy terms and warranties, and said:

"Under our present system of diverse state regulations, which is as old as the Union, the insurance business has become one of the great enterprises of the Nation. Congress has been exceedingly cautious about disturbing this system, even as to marine insurance where congressional power is undoubted. We, like Congress, leave the regulation of marine insurance where it has been—with the States." 75 S.Ct. at 374.

The Supreme Court, in *Wilburn*, did not see fit to fashion a controlling federal rule in the area of marine insurance contracts, and established the rule that State law would regulate such contracts in the absence of federal legislation or a conflicting judicially established precedent.

Marine insurance contracts are not regulated by federal statute or regulation. Interstate seeks to avoid the effect of the

---

1. No motion was presented by Interstate to the trial court that the answers to Special Issues 6 and 9 be disregarded.

Wilburn Boat Rule by asserting that its precedential value has been "eroded" by federal decisions over the years. We do not agree. While it is true that the Supreme Court, in Kossick v. United Fruit Co., 365 U.S. 731, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961), declined to extend the Wilburn Boat Rule to cover the type of maritime contract there involved, *Wilburn* has not been overruled with respect to marine insurance contracts. Texas law, not admiralty law, controls the case presented by this appeal. Irwin v. Eagle Star Ins. Co., 455 F.2d 827 (5th Cir. 1972), cert. denied, 409 U.S. 852, 93 S.Ct. 118, 34 L.Ed.2d 95; F. B. Walker & Sons, Inc. v. Valentine, 431 F.2d 1235, 1239 (5th Cir. 1970); Fireman's Fund Insurance Co. v. Wilburn Boat Co., 300 F.2d 631, 639–640 (5th Cir. 1962); Crispin Co. v. M/V Korea, 251 F.Supp. 878 (S.D.Tex.1965); Travelers Indemnity Co. v. Gulf Weighing Corp., 352 F.Supp. 335, 343 (E.D.La.1972); Lemar Towing, Inc. v. Fireman's Fund Ins. Co., 352 F.Supp. 652, 659 (E.D.La.1972), aff'd 471 F.2d 609 (5th Cir.); 2 C.J.S. Admiralty § 41.

Interstate further claims that even if the Wilburn Boat Rule is still to be given effect, this case falls outside the scope of *Wilburn* because there exists an "entrenched federal precedent" that a 2-man crew on a shrimp boat renders the boat unseaworthy as a matter of law. It relies primarily upon Boudoin v. Lykes Brothers Steamship Co., 348 U.S. 336, 75 S.Ct. 382, 99 L.Ed. 354 (1955); Aguirre v. Citizens Casualty Company of New York, 441 F.2d 141 (5th Cir. 1971), cert. denied, 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58; June T, Inc. v. King, 290 F.2d 404 (5th Cir. 1961); Smith v. Seitter, 225 F.Supp. 282 (E.D. N.C.1964); and Sams v. Haines, 299 F. Supp. 746 (S.D.Ga.1969). We disagree with Interstate. None of cited cases involve a fact situation that is any way similar to the facts of this case. Most of those cases are personal injury cases which were brought by seamen who were performing some function which the court said they should not have been doing alone. The same contention made by Interstate in the instant case was made and rejected in Gulf Coast Trawlers, Inc. v. Resolute Ins. Co., 239 F.Supp. 424, 427 (S.D.Tex.1965), where the vessel sank because of a leak in the hull. Judge Garza disposed of the asserted unseaworthiness contention because of a 2-man crew in these words:

> "I, therefore, find that a 2-man crew does not make a vessel unseaworthy as a matter of law for all purposes and in all respects. The failure to have a third crew member must be a proximate cause of the act complained of, . . ."

■ Seaworthiness of a vessel at a given time is a question of fact. Horton & Horton, Inc. v. T/S J. E. Dyer, 428 F.2d 1131, 1135 (5th Cir. 1970), cert. denied, 400 U.S. 993, 91 S.Ct. 461, 27 L.Ed.2d 441; Aguirre v. Citizens Casualty Company of New York, supra.

■ We have not found, nor have we been cited to any federal statute, regulation, or judicially established precedent which would take this case out of the Wilburn Boat Rule. On the contrary, recent federal decisions are explicit in holding that state law governs the construction and interpretation of marine insurance policies. We so hold. Irwin v. Eagle Star Ins. Co., supra; Rosa v. Insurance Company of State of Pennsylvania, 296 F.Supp. 167, 172 (S.D.Cal.1969), aff'd, 421 F.2d 390 (9th Cir.); Larson Construction Co. v. Oregon Automobile Ins. Co., 450 F.2d 1193, 1195 (9th Cir. 1971); 2 C.J.S. Admiralty § 41; 2 Am.Jur.2d, Admiralty, § 70.

■ Having decided that Texas law must be applied in this case, we now turn to Texas authorities. Article 6.14 of the Texas Insurance Code, V.A.C.S., provides:

> "No breach or violation by the insured of any warranty, condition or provision of any fire insurance policy, contract of insurance, or applications therefor, upon personal property, shall render void the

policy or contract, or constitute a defense to a suit for loss thereon, unless such breach or violation contributed to bring about the destruction of the property."

The appellate courts of this State have interpreted this article to affect only those warranties, conditions and provisions in insurance policies, the breach of which might have contributed to bring about the loss, but which, in fact, did not. McPherson v. Camden Fire Ins. Co., 222 S.W. 211 (Tex. Com.App.1920, holding approved); Texas Farm Bureau Mutual Insurance Co. v. Carnes, 416 S.W.2d 863 (Tex.Civ.App.— Corpus Christi 1967, writ ref'd n. r. e.); 32 Tex.Jur.2d, Insurance, § 228; Holston v. Implement Dealers Mutual Fire Ins. Co., 206 F.2d 682 (5th Cir. 1953). Applying Texas law to this case, the fact that the "San Martin" was manned by only two men at the time in question was no defense to the insured's suit for the loss sustained because of a breach of the herein-quoted warranty. The breach warranted against did not contribute to bring about the destruction of the vessel.

■ By the express terms of Article 6.-13, Texas Insurance Code, V.A.C.S., a fire insurance policy on personal property is not made a liquidated demand for the full amount of the policy. But, the statute does not prohibit the parties to such a contract of insurance on personal property from agreeing upon a sum as insurance which will constitute a liquidated demand upon total destruction of the property by fire. Houston Fire and Casualty Insurance Co. v. Nichols, 435 S.W.2d 140 (Tex. Sup.1968).

An issue as to the actual value of the "San Martin" on the date it burned was neither requested nor submitted to the jury. The problem, therefore, is whether the record establishes as a matter of law that Perez and Interstate intended the policy to be a valued contract. If so, judgment in favor of Perez against Interstate should be rendered; if not, the case with respect to Perez' claim against Interstate should be remanded in order to determine the actual value of the boat when the loss occurred.

■ A "valued policy" is "one in which the measure of the property insured is agreed upon by both parties to the contract, so that in case of a total loss it is not necessary to prove the actual value." 6 Appleman, Insurance Law and Practice, § 3827 (1942).

■ The Supreme Court, in Houston Fire and Casualty Insurance Company v. Nichols, supra, speaking through its then Chief Justice Calvert, approved the following statement from Appleman as the test:

"'In determining whether a policy is open or valued, the contract must be viewed in its entirety, to give effect to the mutual intention of the parties at the time of execution. And the policy must contain expressed language showing such an intent, before it will be deemed to be a valued policy. So, a policy without the words "valued at" or other equivalent language is not valued.'"

In the instant case, the policy upon which suit is founded contains the following language:

"This certifies that PASCUAL PEREZ (assured) has effected insurance with INTERSTATE INSURANCE COMPANY covering the respective interests of the said Pascual Perez (assured) Port Isabel, Texas in the sum of TWENTY THOUSAND AND 00/100 DOLLARS upon the 'SAN MARTIN' valued at SUM INSURED Dollars at and from July 17, 1970 and ending July 17, 1971."

We conclude as a matter of law that both Perez and Interstate intended the policy to be a "valued contract". The phrase " 'San Martin' valued at SUM INSURED Dollars", when considered with the other language showing that the boat was insured in the sum of $20,000.00 clearly and conclusively evidenced that intention.

Since the damages are liquidated and fixed at $20,000.00 for the total loss of the "San Martin", and since there are no remaining fact questions to be resolved, and as the case has been fully developed, it becomes the duty of this Court to render the judgment in favor of Perez on his claim against Interstate that the trial court should have rendered. Rule 434, Texas Rules of Civil Procedure; Sutton v. Reagan & Gee, 405 S.W.2d 828, 838 (Tex. Civ.App.—San Antonio 1966, writ ref'd n. r. e.). Perez' points 1 and 2 are sustained.

We now consider Interstate's attempted appeal from that portion of the judgment which decree that Los Fresnos State Bank do have and recover from Interstate Insurance Company the sum of Four Thousand Six Hundred ($4,600.00) Dollars.

It is well settled that each appellant, in order to perfect an appeal to a Court of Civil Appeals, must comply with the provisions of Rule 386, T.R.C.P. Under the rule, in order for a Court of Civil Appeals to acquire jurisdiction of an appeal, the transcript and statement of facts must be filed by the appellant within sixty days from the rendition of final judgment or order overruling motion for new trial, provided that upon motion filed before, at, or within a reasonable time, not exceeding fifteen days after the expiration of the sixty-day period showing good cause why the same could not be so filed, the Court of Civil Appeals may grant an extension of time upon such terms as it shall prescribe, for the filing of either, or both, the transcript or statement of facts.

Final judgment in this case was rendered on October 31, 1973, in which it is recited that both Perez and Interstate gave notice of appeal. Interstate did not file a motion for new trial; it did file an appeal bond within thirty days following rendition of judgment. Interstate did not file a transcript or statement of facts in this Court, nor did it file a motion for extension of time within which to file the same. The amended motion for new trial, filed by Perez, was expressly overruled by the trial court on December 17, 1973. Perez filed the transcript and statement of facts in this Court on February 11, 1974.

The requirements of Rule 386, T.R.C.P., are mandatory and jurisdictional. The time limits therein prescribed cannot be waived, dispensed with or enlarged except as expressly provided in the Rule itself. Walker v. Cleere, 171 S.W.2d 151 (Tex.Civ.App.—Eastland 1943), certified question answered by the Supreme Court, 141 Tex. 550, 174 S.W.2d 956 (1943); Horn v. Builders Supply Company of Longview, 401 S.W.2d 143 (Tex.Civ.App.—Tyler 1966, writ ref'd n. r. e.); Tydlacka v. Tydlacka, 277 S.W.2d 159 (Tex.Civ.App.—San Antonio 1955, n. w. h.).

The fact that Perez filed a motion for new trial and thereby extended his time for the filing of the record in this Court did not inure to the benefit of Interstate, or excuse the failure of Interstate to file the record within sixty days after rendition of judgment (since it did not file a motion for new trial within the prescribed time). Each appellant "must base his appeal upon his own actions". Angelina County v. McFarland, 374 S.W.2d 417 (Tex.Sup.1964). Interstate's attempted appeal is separate, distinct and different from the appeal which was perfected by Perez. Schell v. Texas Bank & Trust Co., 439 S.W.2d 473 (Tex.Civ.App.—Texarkana 1969, writ ref'd n. r. e.). Under the record, we are compelled to dismiss the appeal of Interstate for want of jurisdiction. Neuhoff Bros., Packers v. Acosta, 160 Tex. 124, 327 S.W.2d 434 (1959); Dorbandt v. Bailey, 481 S.W.2d 939 (Tex.Civ. App.—Tyler 1972, writ ref'd n. r. e.). Interstate's appeal is dismissed.

Even if we did have jurisdiction over Interstate's appeal, we would be compelled to overrule the single point of error asserted (that the Bank was not entitled, as a matter of law, to a recovery against Interstate). That point is predicated on the

ground that there was no coverage to Perez under the policy because the breach of the "3-man" provision of the warranty relieved Interstate of any obligation (under the policy) to the Bank. The contention cannot be sustained.

As has already been held, the breach of warranty does not relieve Interstate from liability in the action brought by Perez. Furthermore, the endorsement which protected the Bank reads, in part:

". . . this insurance as to the interest of the Los Fresnos State Bank . . . (hereinafter called 'Mortgagee') . . . only shall be impaired or invalidated by any act or neglect of the Mortgagor, Owner, Master, Agent or crew of said vessel, nor by any failure to comply with any warranty or condition over which the Mortgagee has no control;

\*     \*     \*     \*     \*     \*

It is further understood and agreed that no claim shall arise hereunder until said mortgagee have exhausted every means at their disposal to protect their interest . . . and to collect any unpaid indebtedness . . . ."

The jury, in answer to Special Issues 11 and 12, found that $5,600.00 was due the Bank upon the Perez note at the time of the fire, and that the Bank exhausted every means at its disposal to collect the note prior to the filing of the suit. Interstate does not complain of those findings. We believe that the endorsement was designed to protect a mortgagee in the situation presented here. Coverage existed in favor of the mortgagee Bank at the time in question.

The judgment of the trial court is affirmed as to the portions which decree that Los Fresnos State Bank recover Four Thousand Six Hundred ($4,600.00) Dollars from Interstate Insurance Company and that Los Fresnos State Bank recover One Thousand ($1,000.00) Dollars from Pascual Perez. The judgment insofar as it decrees that Pascual Perez recover nothing against Interstate Insurance Company is reversed, and judgment is here rendered that Pascual Perez do have and recover the sum of Fourteen Thousand Four Hundred ($14,400.00) Dollars from Interstate Insurance Company (the amount remaining after deducting the sum awarded to the Bank and the deductible from the $20,000.00 policy) together with interest thereon at the rate of 6% per annum from October 31, 1973, the date judgment was rendered by the trial court until paid. All costs incurred in the appeal are taxed against Interstate Insurance Company.

Affirmed in part and reversed and rendered in part.