**HOUSTON FIRE AND CASUALTY INSUR-ANCE COMPANY, Appellant,**

**v.**

**Benny NICHOLS, Appellee.**

**No. 5928.**

Court of Civil Appeals of Texas.

El Paso.

May 8, 1968.

Rehearing Denied May 29, 1968.

Stubbeman, McRae, Sealy & Laughlin, Rush Moody, Jr., Midland, for appellant.

Stephen L. Haley, Seminole, Max E. Ramsey, Andrews, for appellee.

## OPINION

CLAYTON, Justice.

This is an appeal from a judgment for appellee for the recovery of insurance proceeds, entered in the District Court of Gaines County, Texas.

Appellee Nichols obtained two piles of cotton burrs located on the premises of two gins in Gaines County and expected to transport them to farms where he would spread them and receive from the farmers a fixed payment for gathering the burrs, transporting them and spreading them for fertilizer. He contacted a W. L. McNeil, an insurance agent in Midland, Texas having an agency contract with appellant company. This insurance agent personally viewed the burr piles and got in touch with one James W. Howard, who was the manager of the Midland branch of appellant company, supervising the West Texas area for the company. As a result, a 30-day insurance "binder" was issued, pending the issuance of insurance policies, on each of the burr piles, in the amount of $3,000.00 each. This binder was written by McNeil but was not delivered to appellee before the loss, and it described the product to be insured as "cotton seed hulls" and as being "in the open", or off the gin premises.

The two piles of burrs were destroyed by two separate fires and appellant denied liability. Suit was filed by appellee which was tried by a jury on special issues, in answer to which the jury found:

1. That W. L. McNeil represented to Benny Nichols that the insurance binder gave insurance coverage on the cotton burrs in question.

2. That at the time of the issuance of the binder McNeil was acting as the agent of appellant.

3. That Nichols relied on the representations referred to in No. 1.

4. That Nichols could not have lessened his damages by seeking replacement of the cotton burrs following the fires.

5. Not answered since conditioned upon an answer "He could have" to No. 4.

6. That McNeil did not fail to disclose to Jim Howard that the commodity sought to be insured by Nichols was cotton burrs.

7. Not answered since conditioned upon an answer "He did fail" to No. 6.

8. That Mr. Williams (an associate of McNeil) did not fail to disclose to Jim Howard that the commodity sought to be insured was cotton burrs.

9. Unanswered, conditioned upon a "He did fail" answer to No. 8.

10. That McNeil did not fail to disclose to Jim Howard the commodity was located on gin premises.

11. Unanswered, conditioned upon a positive answer to No. 10.

12. That Williams did not fail to disclose to Jim Howard the commodity was located on gin premises.

13. Unanswered, conditioned upon a positive answer to No. 12.

14. That Jim Howard did not give specific instructions to McNeil not to issue a binder if the property was located on gin premises.

15. That McNeil did not issue the binder to Nichols without authority from Jim Howard.

16. That $6,000.00 would compensate Nichols for the damage to his property by fire (accompanied by appropriate definitions).

Whereupon the trial court overruled the appellant's motion for judgment N. O. V. and rendered judgment for appellee in the amount of $6,000.00, from which this appeal is taken.

Appellant presents seventeen points of error which will hereinafter be discussed as we proceed. The first seven points of error are grouped together by appellant and are as follows:

First Point: The trial court erred in entering judgment on a binder of insurance not authorized or agreed to by the insurance company.

Second Point: The trial court erred in giving effect to the jury's finding on Special Issue No. 2 that McNeil was an agent of appellant company when the binder was issued, as there was no evidence or insufficient evidence to support the finding.

Third Point: There was no jury finding, and no proof that the binder was issued by an agent of appellant company acting within his authority.

In support of these points appellant relies heavily on authorities which hold, in effect, that under the circumstances of this case McNeil was actually an agent of the appellee rather than appellant. In contrast, as pointed out by appellee, we also observe on this question that in Article 21.-02, Texas Insurance Code, V.A.T.S., on "who are agents", there is provided as follows:

"Art. 21.02. Who Are Agents

"Any person who solicits insurance on behalf of any insurance company, whether incorporated under the laws of this or any other state or foreign government,

or who takes or transmits other than for himself any application for insurance or any *policy of insurance to or from such* company, or who advertises or otherwise gives notice that he will receive or transmit the same, or who shall receive or deliver a policy of insurance of any such company, or who shall examine or inspect any risk, or receive, or collect, or transmit any premium of insurance, or make or forward any diagram of any building or buildings, or do or perform any other act or thing in the making or consummating of any contract of insurance for or with any such insurance company other than for himself, or who shall examine into, or adjust, or aid in adjusting, any loss for or on behalf of any such insurance company, whether any of such acts shall be done at the instance or request, or by the employment of such insurance company, or of, or by, any broker or other person, *shall be held to be the agent of the company for which the act is done,* or the risk is taken, as far as relates to all the liabilities, duties, requirements and penalties set forth in this chapter." (Emphasis supplied).

Under the provisions of this article we find that McNeil was the agent of appellant company and therefore the binder of insurance was authorized by and agreed to by appellant company through McNeil as its agent acting within his authority, and the jury was supported by evidence in so finding. The first three points of error are overruled.

The next four points of error, further relative to whether or not there was a contract of insurance, are:

Fourth Point: The trial court erred in entering judgment, in effect, for a loss by reason of interruption of Nichols' business where such risk was never insured against nor any policy or binder of insurance ever requested, or issued, thereon.

Fifth Point: The binder covered, at most, loss to personal property when the insured was attempting to obtain business interruption insurance.

Sixth Point: Judgment was entered on a binder for a loss to cottonseed hulls when all the proof was to a loss of cotton burrs.

Seventh Point: No premium was ever paid on the binder.

■ In answer to the fourth and fifth points it seems clear that Nichols was attempting to secure insurance covering the burr piles which were to be used in his planned fertilizer business, and it was a natural result that the destruction by fire of the burrs put an end to his plans. He had taken McNeil and his associate Williams to the gins to view the burr piles and when he learned he could insure the burrs, he also arranged for insurance on a truck and equipment to haul and spread the burrs. Regardless of the language used, it seems clear it was the intention of the parties to insure the burrs as a commodity with which to engage in his proposed business. We see no merit in the fourth and fifth points and they are overruled.

■ In the sixth point of error, as to the difference between the commodity insured—cottonseed hulls—and the proof of loss of cotton burrs, the jury found that neither McNeil, the insurance agent, nor Williams, his associate, failed to disclose to Howard, a manager and supervisor of the insurer, that the commodity to be insured was cotton burrs, after having received the request for insurance from Nichols and having viewed the commodity. McNeil testified he had discussed the matter with Howard after finding that burrs were not included in the insurance rate book or manual, but that cottonseed hulls were, and that Howard instructed him to list the item as hulls "in the open". Williams also testified he discussed the matter of insuring burrs with Howard. We find the jury's answers supported by evidence and accordingly overrule the Sixth Point of Error.

■ As to non-payment of premium on the binder, complained of in the Seventh

Point of Error, Nichols testified that he did not know whether this premium was included in a bill from NcNeil for premiums on other insurance or not, but if not, he offered to tender the premium into court if told the amount. McNeil also testified he did not know if this premium was included among other premiums paid by Nichols, or not, but he had done business with Nichols on a credit basis, and if the premium had not been paid, Nichols "was good for it". This point of error is overruled.

■ Before discussing the following points of error it should be emphasized here that this is not a damage suit where the amount of loss or damage is not fixed but needs to be determined, but is a suit upon a contract of insurance where a total loss occurs, and is governed by the amount of insurance given by the contract to the insured commodity. The value placed upon the commodity is fixed by agreement of the parties and such agreement as to value is determinative where all the commodity is lost. In this case, the agreement as to value was $3,000.00 on each of the two piles of cotton burrs, for a total loss of $6,000.00. This value was placed in the binder just about 13 days before the first fire and an additional 12 days before the second fire. This is the amount of damage here, since there seems to be no dispute that both piles were totally destroyed by fire. This is the amount of damage the jury found in answer to the damage issue, and we feel properly so.

This, then, serves to provide an adverse ruling on Point of Error No. 8, complaining that there was no evidence to show that the cotton burrs, herein involved, had any monetary value, as well as Point of Error No. 9, that there was insufficient evidence to show a monetary value for the property. The Tenth Point of Error, that there was no evidence, or insufficient evidence, to support the jury's finding of $6,-000.00 as the value of the cotton burrs, is also overruled.

The Eleventh Point of Error is as follows: "The trial court erred in the form of submission of the damage issue to the jury, over appellant's objection, in that an incorrect measure of damages was applied; the appellee should have been held to the measure of damages contracted for in the purported binder of insurance". This seems to be the very rule we are following and which the jury apparently followed, thus rendering error on the part of the court, if any, harmless. This point is overruled.

■ The Twelfth Point of Error, also dealing with Special Issue No. 16, the damage issue, is in six parts. The first part repeats, "the measure of damages included in Special Issue No. 16 was not the measure of damages contracted for, if there was a contract." What has heretofore been said will serve to overrule this part, and it is believed that the other parts need not be dwelt upon, except the sixth part which complains that this special issue lumped together all claimed damages, whereas from the pleadings and evidence there were separate items of personal property located at different places and destroyed at different times. This may be answered by pointing out that suit was upon the contract—the binder—which covered both piles of burrs, and although two proofs of loss were made, no action was taken by the insurer on the first loss until after the second loss had occurred. Point of Error No. 12 is overruled.

The four parts to Point of Error No. 13 had been touched upon and need not be gone into except to point out that here again appellant complains that there was no jury finding as to the amount of loss sustained, as measured by the insurance contract, if there was a contract. This point of error is also overruled.

■ The Fourteenth Point of Error was directed to the court's acceptance of the jury's answer to Special Issue No. 4, that Nichols could not have minimized his damages, when such answer was unsup-

ported by any evidence, was contrary to the overwhelming preponderance of the evidence and Nichols' own admissions in his testimony. There was some conflict in Nichols' testimony, but under a point relative to a "no evidence" point, we follow the rule that we examine such evidence as is favorable to the verdict, together with all proper intendments and presumptions, and if there is any evidence in support of the matter, the "no evidence" point must be overruled. As to the question of "contrary to the overwhelming preponderance" of the evidence, we follow the rule laid down in In re King's Estate, 150 Tex. 662, 244 S. W.2d 660, 661 (1952) in which it is stated:

> " * * * It is not infrequently described as a question of 'sufficiency' of the evidence. See Hall Music Co. v. Robinson, 117 Tex. 261, 1 S.W.2d 857; Wisdom v. Smith, 146 Tex. 420, 209 S. W.2d 164, 166. The question requires the Court of Civil Appeals, in the exercise of its peculiar powers under the constitution and Texas Rules of Civil Procedure Nos. 451, 453, and 455, to consider and weigh all of the evidence in the case and to set aside the verdict and remand the cause for a new trial, if it thus concludes that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust— this, regardless of whether the record contains some 'evidence of probative force' in support of the verdict. See cases cited, supra. The evidence supporting the verdict is to be weighed along with the other evidence in the case, including that which is contrary to the verdict."

Under these criteria, we overrule the Fourteenth Point of Error.

The Fifteenth Point of Error complains of the court having overruled certain of the appellant's objections to the charge and its Motion for Judgment (Sixteenth Point of Error) and its Amended Motion for New Trial (Seventeenth Point of Error). These points of error are too indefinite to apprise the court of the specific errors complained of, and in any case a detailed discussion thereunder would unjustifiably lengthen this opinion, already perhaps too long. Suffice it to say that we have studied these points as fully as might be under their language, and find no reversible error.

Having treated all points of error and finding none, the judgment of the trial court is in all things affirmed.