**HOUSTON FIRE AND CASUALTY INSUR-
ANCE COMPANY, Petitioner,**

v.

**Benny NICHOLS, Respondent.**

No. B–1002.

Supreme Court of Texas.

Dec. 11, 1968.

Stubbeman, McRae, Sealy & Laughlin, Rush Moody, Jr., and Gene L. Jameson, Midland, for petitioner.

Stephen F. Haley, Seminole, Max E. Ramsey, Andrews, for respondent.

CALVERT, Chief Justice.

Respondent, Benny Nichols, sued for and recovered $6,000 on a contract of insurance covering separate piles of cotton burrs which were destroyed by fire. The court of civil appeals affirmed. 428 S.W.2d 458. We reverse and remand.

The case was tried to a jury. In response to a special issue on damages, the jury answered that $6,000 would fairly and reasonably compensate Nichols for damage caused by the fires. The jury was instructed that, in answering the damage issue, "the measure of damage would be the difference between the reasonable cash market value of the property, if any, before and after the fire." The jury was also instructed that, if the property had no market value where it was located, the measure of damages was "the value of the property at the time of its destruction at the most available place at which there is a market less the cost of transportation thereto."

The jury's answer to the damage issue was attacked by Houston Fire & Casualty in the court of civil appeals as having no support in the evidence. The court of civil appeals disposed of the question thus presented by holding that, "[T]he value placed upon the commodity is fixed by agreement of the parties and such agreement as to value is determinative where all the commodity is lost." The court thus held that when Houston Fire & Casualty agreed to insure the burrs for $6,000, it thereby fixed the amount it would be required to pay in the event of a total loss of the property. We granted writ of error primarily to review that holding and the related question of whether there is evidence otherwise in the record to support the jury's answer to the damage issue.

Nichols, a Gaines County farmer, decided to go into the business of hauling cotton burrs from gin lots to neighboring farms and of spreading them over the land as fertilizer. His plan was to buy equipment for the enterprise consisting of a truck, a loader and a spreader, at a cost of $6,900, when he had been assured of a sufficient quantity of burrs to justify beginning the operation. He expected to make a profit of from $2.00 to $2.50 per ton of burrs by charging $2.50 per ton on all burrs hauled and spread within a radius of 5 miles with an additional charge of 10¢ per mile for those hauled and spread beyond 5 miles.

Two Gaines County gins donated their burrs to Nichols and he promptly sought insurance on them. There were an estimated 1100 tons of burrs in one gin lot pile and 1200 tons in the other. Houston Fire & Casualty's agent issued a thirty-day binder on December 16, 1963, insuring each pile of burrs for $3,000. The written contract bound the company, "subject to the terms and conditions of the Texas Standard Policy." One pile was destroyed by fire on December 29, 1963, and the other was destroyed on January 10, 1964.

There is absolutely no evidence in the record supporting the jury's answer to the damage issue, i. e., difference in the reasonable cash market value before and after the fires. The evidence will support a finding that the burrs were totally de-

stroyed and had no value after the fires, but there is no evidence of market value before the fires, evidence which is necessary to support a finding of difference in value before and after. Indeed, Nichols states in his answer to the application for writ of error that, "we cannot and do not contend that there was a market value for the cotton burrs, but that the burrs had a value to the petitioner [respondent] for the use to which he would put them." Issues as to lost profits, intrinsic value, or value to Nichols were not submitted to the jury, and we are not concerned with the possible effect of jury findings with respect to such issues. If the judgment in favor of Nichols is to be affirmed, affirmance must rest upon the theory adopted by the court of civil appeals; and, we may add, Nichols does not seek to support that theory in this court.

■■■ The net effect of the holding of the court of civil appeals is to treat a contract of insurance on personal property as a valued contract, with the full amount payable to the insured in case of total loss of the property irrespective of the actual loss sustained by the insured. The court of civil appeals cited no authority for its holding and respondent Nichols does not defend it.

Article 6.13, Texas Insurance Code, V.A.T.S., is the only statute which seems to have any relevancy. It provides:

"A fire insurance policy, in case of a total loss by fire of property insured, shall be held and considered to be a liquidated demand against the company for the full amount of such policy. *The provisions of this article shall not apply to personal property.*" (Emphasis ours.)

By the express terms of Article 6.13, a fire insurance policy on personal property totally destroyed by fire is not made a liquidated demand for the full amount of the policy. On the other hand, the statute does not prohibit the parties to a contract of insurance on personal property from agreeing upon a sum as insurance which will constitute a liquidated demand in the event of total loss of the property. Queen Ins. Co. v. Jefferson Ice Co., 64 Tex. 578 (1885). The immediate problem, therefore, is whether the record establishes as a matter of law, as the court of civil appeals necessarily has held, that Nichols and Houston Fire & Casualty intended the binder to be a valued contract.

■■ Appleman defines "a valued policy" as "one in which the measure of the value of the property insured is agreed upon by both parties to the contract, so that in case of a total loss it is not necessary to prove the actual value." See 6 Appleman, Insurance Law and Practice, § 3827 (1942). We quote further from the same volume and section of Appleman:

"In determining whether a policy is open or valued, the contract must be viewed in its entirety, to give effect to the mutual intentions of the parties at the time of its execution. And the policy must contain express language showing such an intent, before it will be deemed to be a valued policy. So, a policy without the words 'valued at' or other equivalent language is not valued."

If we apply the test quoted from Appleman, we must conclude that the court of civil appeals erred in holding, as a matter of law, that the binder issued by Houston Fire & Casualty is a valued contract. The record indicates quite the contrary. The contract was only temporary. The values placed on the two piles of burrs were strictly estimates. The printed contract shows that the sum of $3,000 was typed into the form to show "amount of insurance" as to both piles of burrs. Finally, the binder was subject to the terms and conditions of the Texas Standard Fire Policy. The terms and conditions of the Texas Standard Fire Policy are not in the record.

Inasmuch as the judgment of the courts below cannot be supported on the "valued contract" theory, it must be reversed.

After the jury verdict came in, Houston Fire & Casualty moved for judgment notwithstanding the verdict. One of the grounds of the motion was the absence of evidence to support the finding of damages. It has preserved its right to insist that the judgment of the trial court be reversed and that judgment be rendered that Nichols take nothing. However, the record indicates that the burrs had some market value, and, in any event, shows that they had an intrinsic value to Nichols. The record also shows that the insurer's agent estimated the value of the burrs to be $6,000 and made a premium charge based on that valuation. To deny Nichols another opportunity to develop his evidence fully would be unjust. Accordingly, we exercise the discretion conferred upon the court by Rule 505, Texas Rules of Civil Procedure, and, in the interest of justice, remand the cause to the trial court for re-trial.

The judgments of the court of civil appeals and trial court are reversed and the cause is remanded to the trial court.