**REPUBLIC INSURANCE COMPANY,
Appellant,**

v.

**Juanita Coe HOPE et al., Appellees.**

**No. 5778.**

Court of Civil Appeals of Texas,
Waco.

Oct. 27, 1977.

Rehearing Denied Nov. 17, 1977.

**604**

Harlan Harper, Jr. and Barry H. Fanning, Fanning & Harper, Dallas, for appellant.

Warwick H. Jenkins, Jenkins & Jenkins, Waxahachie, for appellees.

HALL, Justice.

Juanita Coe Hope and L. W. Scott brought this suit against Republic Insurance Company on a policy of insurance issued to plaintiffs by defendant to recover for losses allegedly suffered by plaintiffs when vandals twice burglarized a house plaintiffs were constructing in the City of Waxahachie and stole tools, equipment, and materials located in the house, and also damaged the structure. Defendant answered with only a general denial. After a trial without a jury, judgment was rendered in favor of plaintiffs for $2,961.59. Defendant appeals asserting among other contentions (1) that the policy does not cover theft losses, and (2) that the evidence does not establish "the reasonable cash market value" of the items in question "on or about the respective dates of the two thefts, in and around Ellis County, Texas," as required by the policy. We overrule defendant's contentions and affirm the judgment.

The basic policy is denominated on its face a "TEXAS STANDARD POLICY." Under "Location" is typewritten, "Country Club Village, Waxahachie, Texas"; and under "Property" is typewritten, simply, "Builder's Risk." The policy insures plaintiffs "from 11/18/74 To 11/18/75 at the location of property against direct loss resulting from any of the Perils (listed below) . . . and only on the property described and located as provided hereon." The following are listed under "Perils":

"Fire and lightning.

"Extended Coverage—Windstorm, Hurricane, Hail, Explosion, Riot, Civil Commotion, Smoke, Aircraft, and Land Vehicles.

"Physical Loss Form # 148."

"Total Insurance" is stated in the policy to be "$27,000.00."

Attached to the basic policy are a "Form No. 148" and a "Form No. 21." All three instruments are dated November 18, 1974.

The Form No. 148 is headed:

"PHYSICAL LOSS FORM
"Dwelling Building(s) Only

"For attachment to a Texas Standard Policy. Applicable only to dwellings designed for occupancy by not more than two families."

It contains the following provisions, among many others:

"Insurance under this form attaches only to the dwelling(s) described on the first page of this policy and extensions herein provided, and, if described on the first page of this policy, to any private garage, servants' house, and if used solely in connection with the occupancy of said described dwelling(s), structures and other outbuildings on the premises of said described dwelling(s), for each of which an amount of insurance is shown in the space provided therefor on the first page of the policy, and not exceeding said amount.

"Wherever the word 'fire' appears in this policy . . . the words 'all risks of physical loss' shall be substituted therefor as to coverage provided by this form on dwelling(s), building(s), structure(s) and extension(s) herein provided.

"Section I

"COVERAGE: Subject to the provisions of this form and of the policy to which this form is attached including endorsements thereon, this policy insures against all risks of physical loss to the described dwelling(s), building(s) or structure(s) covered under this form.

"Section II

"EXCLUSIONS: This policy does not insure against—

"A. Loss to either plumbing or heating systems including appliances, or by leakage or overflow from such systems or appliances, caused by freezing while the described building(s) is vacant or unoccupied, unless the Insured shall have exercised due diligence with respect to maintaining heat in the building(s) or unless such systems and appliances had been drained and the water supply shut off.

"B. Loss by termites or other insects; deterioration; . . . rust; wet or dry rot; mould; . . . settling, shrinkage or expansion in foundations, walls, floors, or ceilings; . . .

"F. Loss by theft of any property: (1) which at the time of loss is not an integral part of any dwelling, private garage, servants' house, and if used solely in connection with the occupancy thereof, structures and other outbuildings on the premises of the dwelling(s); (2) from a building in process of construction; . . .

"Section III

"DEFINITIONS:

"A. Dwellings: A Dwelling shall mean any building designed for occupancy by not more than two families and shall include everything which is legally a part of the dwelling, except machinery which is not used solely in the service of the dwelling . . . . .

"C. Rental Value: Rental Value shall mean in the event of damage or destruction of the described property by any peril insured hereunder, the fair rental value of the building(s) or parts thereof, as furnished and equipped by the owner, and whether rented or not. Loss of rental value shall be computed for the period of time, following loss, which would be required with the exercise of due diligence and dispatch, and not limited by the expiration date of this policy, to restore the property to a tenantable condition . . .

"D. Additional Living Expenses: Additional Living Expense shall mean, in the event of damage or destruction of the described property by any peril insured against, the necessary increase in living expense incurred by the Insured in order to continue as nearly as practicable the normal standard of living of the Insured's households for . . . (1) the time required, with the exercise of due diligence and dispatch, to repair or replace the damaged or destroyed property; [or] (2) the time required for the Insured's household to become settled in any permanent quarters.

"Section IV

"C. Rental Value and Additional Living Expense: The insured may apply up to ten per cent (10%) of the amount of insurance specified for the principal dwelling item under this policy to cover loss (where such loss is by any peril insured against) for both (1) Rental Value of the described building(s) with respect to any portion thereof not occupied by the Insured and (2) Additional Living Expense with respect to any portion of the described building(s) occupied by the Insured, but not to exceed said ten per cent (10%) for both (1) and (2) in the aggregate.

"Section V

"E. Vacancy. The policy Condition suspending coverage while a described building is vacant beyond a period of thirty consecutive days is hereby waived with respect to loss caused by perils other than fire and lightning and vandalism and malicious mischief and is extended to ninety days with respect to loss caused by the perils of fire and lightning and vandalism and malicious mischief. The ninety days vacancy period shall commence with the date the building becomes vacant whether or not such time is prior to the inception date of this endorsement. A building in course of construction shall not be deemed to be vacant.

"G. Permission to Make Alterations and Repairs: Permission is granted to make alterations, additions and repairs, and to complete structures in course of construction, and this policy covers all lumber and materials on the premises or adjacent thereto. . . . ."

The Form No. 21 is headed, "BUILDER'S RISK—ACTUAL COMPLETED VALUE FORM." In its pertinent parts it provides as follows:

"1. This policy being for an amount not to exceed one hundred per cent (100%), hereinafter referred to as 'this Company's percentage of liability,' of the actual values existing in any building or structures described below, from time to time as values are added, and not to exceed in any event 'this Company's percentage of liability' of the 'Estimated Completed Cost,' as hereinafter provided, on the following described property:

(1) Class of Construction: Brick-Veneer.

Intended occupancy: Dwelling. •

No. Country Club Village, Waxahachie, Texas. Lot 1, Block J.

Estimated Completed Cost: $27,-000.00.

"2. This policy as to each or any building or structure above described shall be and constitute insurance on each or any of the said buildings or structures while in course of construction in an amount not to exceed 'this Company's percentage of liability' of the actual values which may have been placed into or made a part of each or any of such buildings or structures. The amount of insurance applicable to each or any of the buildings or structures insured under this policy while in course of construction shall change from time to time in accordance with the actual values which have been put into each or any of such buildings or structures (in so far as they may have been completed at the time of loss); . . .

"3. Materials, Equipment and Supplies: This policy also covers materials, equipment, supplies and temporary structures of all kinds to be used in the construction of the said building and (when not otherwise insured under this or any other policy) builders' machinery, tools and equipment; all while forming a part of, or contained in said building [or on the premises of construction] . . .

"4. Expiration: It is understood and agreed that this insurance shall attach only while the building or buildings are in the course of construction, and until fully completed and occupied either in whole or in part. In no event shall this insurance extend more than thirty (30) days beyond the completion of the main building."

Defendant argues that assuming the trial court construed the policy to be a "Builders' Risk" policy, then the basic policy is composed of the Texas Standard Form and the Builders' Risk Form No. 21; that the only endorsement would be the Physical Loss

Form No. 148; that although the Builders' Risk Form provides theft insurance "by implication" in its paragraph 3, the Physical Loss Form expressly excluded theft coverage in its Section II,F,(2); and that specific terms of an endorsement on coverage control over general terms of the policy on the same coverage. We reject this argument.

◼ Where several instruments form one overall contract, the court will assume in its construction of the contract that the parties honestly intended the terms of the various instruments should be effective to accomplish their purposes, and will reconcile apparently conflicting provisions and give effect to all of them, if possible. *Guadalupe-Blanco River Authority v. City of San Antonio,* 145 Tex. 611, 200 S.W.2d 989, 1003 (1947). Applying these rules, we construe the instruments in question to provide plaintiffs Builders' Risk coverage on the structure of the house at an increasing value as construction progressed until thirty days after construction was completed, under the Texas Standard Form and the Builders' Risk Endorsement (Form No. 21). Then, once the house was completed and ready for occupancy (or occupied by plaintiffs or their tenant), plaintiffs were accorded coverage in the amount of $27,000.00 on the house under the Physical Loss Form (Form No. 148). Although in Section V,G this endorsement expressly acknowledged plaintiffs' right to complete construction of the house after the effective date of the endorsement, theft from the structure while under construction was expressly excluded from its terms in Section II,F,2, in keeping with its basic purpose of providing insurance after completion of construction. However, such coverage was provided in the policy under the terms of the Builders' Risk endorsement (Form No. 21), in keeping with its basic purpose of providing insurance during construction. Additionally, this endorsement provided, in paragraph 3, indemnity for loss occasioned by theft of plaintiffs' materials, equipment, supplies, and tools located on the premises during construction.

◼ In any event, under defendant's theory the contract of insurance would have been an "all risks" policy during and after construction; and defendant would have waived the theft exclusion relied upon by failing to affirmatively plead it. Rule 94, Vernon's Tex.Rules Civ.Proc.; *T.I.M.E., Inc. v. Maryland Casualty Company,* 157 Tex. 21, 300 S.W.2d 68, 73 (1957); *Camden Fire Ins. Ass'n v. Moore,* 206 S.W.2d 104, 107 (Tex.Civ.App.—Galveston 1947, writ ref. n. r. e.).

The proof shows that in November 1974, plaintiffs secured a building permit for and began construction of the house in question at 441 Gingerbread Lane, in an addition known as Country Club Village, in the City of Waxahachie. The house was completed on March 26, 1975. On January 26th, and again on March 10th, the house was broken into and burglarized, and the thefts and damages sued upon were committed. Both acts of theft and vandalism occurred at night, and were discovered the next morning. In each instance plaintiffs replaced the tools and equipment stolen, and repaired the damages, soon after the occurrence. They sold the house in September, 1975.

◼ Plaintiff Scott had been in the house construction business for 20 years at the time of trial. He was shown to have expert knowledge on the costs of the damage repair, and the value of the tools, materials, and equipment stolen. He testified to these costs and values. Defendant now asserts that the witness's testimony did not show "reasonable cash market value" of the items "at or about the dates" of the burglaries "in Ellis County." Defendant did not make these objection on the trial. Its only objections (and these were infrequent) were "no proper predicate laid" (without any factual basis stated) and, simply, "we object." These objections were too general to preserve defendant's present complaints. *Plyler v. City of Pearland,* 489 S.W.2d 459, 461 (Tex.Civ.App.—Houston [1st Dist.] 1973, writ ref. n. r. e.); 1 McCormick & Ray, Texas Law Of Evidence (2d ed. 1956), p. 22, § 24. Additionally, the record shows that

the witness testified first to the losses suffered in the January burglary, and then to the losses caused by the March burglary. Time and again in the course of his testimony the witness directly related the losses to "reasonable market value," "reasonable and fair market value," "fair market value," "reasonable cost to repair," "in the Waxahachie area," "at the time of replacement," and "at the time of repair." All of his testimony of damages was related to those terms, although they were not expressly contained in every question propounded to him.

Defendant's remaining points and contentions are also without merit. They are overruled.

The judgment is affirmed.