**AMERICAN GENERAL FIRE AND CAS-UALTY COMPANY, a Texas Insurance Company, d/b/a American General Companies, et al., Appellants,**

v.

**George M. BUFORD, Appellee.**

No. 14528.

Court of Appeals of Texas, Austin.

July 23, 1986.

Rehearing Denied Sept. 24, 1986.

J. Sam Winters, Clark, Thomas, Winters & Newton, Michael G. Mullen, Demaris Gullekson, Brown, Maroney, Rose, Barber & Dye, Austin, for appellants.

Nicolai von Kreisler, Alvis, Carssow & von Kreisler, Joe K. Longley, Longley & Maxwell, Austin, for appellee.

Before SHANNON, C.J., and EARL W. SMITH and GAMMAGE, JJ.

EARL W. SMITH, Justice.

American General Fire & Casualty Company, d/b/a American General Companies [American General], issued its fire and extended coverage insurance policy with builder's risk Form 21 endorsement to George M. Buford, covering a building located in Maxwell, Caldwell County, Texas. Fire destroyed the building, and Buford unsuccessfully attempted to collect $75,000 under the policy. He then brought suit.

Trial was to a jury. From a judgment for $75,000 plus interest and attorney's fees, based upon an instructed verdict, American General appeals. Its sole point of error is that the trial court erred in granting appellee Buford's motion for directed verdict because Tex.Ins.Code Ann. art. 6.13 (1981) does not apply to the policy in question, which American General contends was a builder's risk policy. Buford contends that the policy in question was not a builder's risk policy, but a Texas Standard Fire Policy, renewing a prior policy and increasing coverage from $50,000 to $75,000, with a builder's risk Form 21 endorsement (because renovations were being made on the building), and that the policy therefore was a valued policy within the meaning of art. 6.13. Though Frank Siddons was a party to the action in the trial court, he is not a party to this appeal. Appellant and appellee so agree.

### THE POLICY

The policy in question was issued for the period from September 19, 1982 to March 19, 1983. The face of the policy, a "Texas Standard Fire" policy, and the builder's risk Form 21 endorsement are set out in footnotes 1 and 2.[1,2]

In the declaration of coverage on the face of the policy, column 4, titled "TOTAL INSURANCE," shows *no amount;* instead, the entry says *"SEE ATTACHED FORM 21."* Again, in the "DESCRIPTION OF PROPERTY" section of the standard policy, no figure is shown in the "AMOUNT OF INSURANCE" column, and there is *no description* of the property insured in the space therefor.

The Form No. 21 endorsement is titled "BUILDER'S RISK—ACTUAL COMPLETED VALUE." Paragraph 1 of the builder's risk endorsement reads:

1. This policy being for an amount not to exceed *One Hundred* per cent (100%), hereinafter referred to as "this company's percentage of liability," *of the actual values existing in any building* or structures described below, *from time to time as values are added, and not to exceed in any event "this Company's percentage of liability" of the "Estimated Completed Cost,"* as hereinafter provided, on the following described property:

(Emphasis added.) Subparagraph (1) describes the property insured, showing its "intended occupancy" to be "Duplex." In this subparagraph the *"Estimated* Completed Cost" is shown as $75,000. (Emphasis added).

Paragraph 2 of the "Form 21 Builder's Risk—Actual Completed Value Form" reads:

2. This policy as to each or any building or structure above described shall be and constitute insurance on each or any of the said buildings or structures while in course of construction in an amount not to exceed "this Company's percentage of liability" of the actual values which may have been placed into or made a part of each or any of such buildings or structures. *The amount of insurance applicable to each or any of the buildings or structures insured under this policy while in course of construction shall change from time to time in accordance with the actual values which have been put into each or any of such buildings* or structure (*in so far as they may have been completed at the time of loss);* but in no event shall the amount of insurance under this policy with respect to these buildings or structures and materials, equipment or supplies, as provided in paragraph 3 hereof, exceed "this Company's percentage of liability" of the "Estimated Completed Cost" of each as shown in this policy nor shall this Company's liability for any loss hereunder exceed "this Company's percentage of liability" of such loss. (Emphasis added.)

The provisions printed on the back of this form are hereby referred to and made a part hereof.

1. See Appendix A.

2. See Appendix B.

Prescribed by The State Board of Insurance.

NOTE TO AGENTS: *In the blanks provided on the face of the policy for showing amounts of insurance, insert "See Form Attached."* (Emphasis added.)

Paragraph four of Form 21 reads:

4. Expiration: It is understood and agreed that this insurance shall attach only while the building or buildings are in the course of construction, and until fully completed and occupied either in whole or in part. In no event shall this insurance extend more than thirty (30) days beyond the completion of the main building. The insurance on private garages and outbuildings shall not cease until the insurance on the main building with which they are to be used ceases. Machinery may be set up and operated solely for the purpose of testing the same without prejudice to the policy.

Paragraph eight thereof reads:

8. Final Adjustment Clause: Since the premium under this policy has been based on the "estimated" completed cost of the building or buildings or structure insured hereunder, it shall be optional with the insured or company for the premium to be recomputed on the basis of "actual" completed cost and the premium adjusted accordingly. This Company or its duly appointed representative shall be permitted at all reasonable times during the term of this policy or within one year after liability hereunder has ceased, to inspect the property insured and to examine the insured's books, records and policies in so far as they relate to any property covered hereunder, and to check actual cost of buildings insured. This inspection and/or examination shall not waive or in any manner affect any of the terms or conditions of this policy.

## BUFORD'S PETITION

Buford alleged six causes of action: (1) breach of contract; (2) violation of Tex.Ins. Code Ann. art. 6.13 (1981); (3) violation of art. 21.21, § 16(a) Tex.Ins.Code Ann. and Board Regulation No. 41060 promulgated thereunder; (4) a Deceptive Trade Practice action, by violation of Section 17.41 *et seq.* Tex.Bus. & Com.Code Ann.; (5) breach of duty of good faith and fair dealing; and (6) gross negligence and negligent misrepresentation.

Plaintiff alleged actual damages of:

(1) $75,000, *representing the face amount of the fire policy,* and the reproduction cost, without deductions for depreciation

(2) Interest on damages at the rate of ten percent (10%) beginning 60 days after the loss until the present.

Plaintiff also pleaded, "to the court only," treble damages under art. 21.21, Tex.Ins.Code, and additional damages under the deceptive trade practices cause of action. Buford also sought exemplary damages and attorney's fees. The court granted an instructed verdict on the first cause of action, holding that art. 6.13 of the Insurance Code applied and the full "estimated completed value" of the policy (stated in the builder's risk Form 21) was the measure of damages when the building was a total loss. The only issues submitted to the jury were under the other alleged causes of action. These issues were answered in favor of American General. Judgment was entered, reciting:

During the trial, the Plaintiff moved for a directed verdict on the ground that the liability of defendant AMERICAN GENERAL FIRE & CASUALTY COMPANY to Plaintiff was established, as a matter of law, for SEVENTY–FIVE THOUSAND AND NO/100 DOLLARS ($75,000) under the terms of the insurance policy and the court granted such motion.

The court again recited that the (oral) motion for instructed verdict was granted, and entered judgment for Buford for $75,000 plus interest and attorney's fees.

As background information in his pleadings, Buford alleged that American General increased his coverage from $50,000 (under the prior policy) to $75,000 and added a Form 21 builder's risk rider, which was added at the direction of American Gener-

al's agent "because he was converting the old bank building into apartments with the possibility of commercial space" and "because the old bank building was a completed brick and newly refurbished structure, Plaintiff's *remodeling if completed would have added little material or added value to the structure.*" (Emphasis added.)

Under his first cause of action, Buford pleaded total loss [conceded by American General] and alleged that he was entitled to recover the face value under art. 6.13, Texas Insurance Code, as incorporated in the policy.

## THE INSTRUCTED VERDICT

At the beginning of the trial, Buford called, as an adverse witness, Mr. Stone, the claims adjuster for American General. In his examination of Stone, Buford sought to show that the policy was a renewal of a valued policy providing $75,000 coverage and that he was entitled to recover that amount. Stone contended that Buford purchased a different policy. He said that the prior policy was converted from a standard fire policy to a builder's risk policy, stating that Buford was threatened with having his prior policy canceled because the building was vacant and had been so for some time;[3] that the only way Buford could get coverage was to "start doing something with the property and had to do so under a builder's risk policy"; that Buford could not get $75,000 because the endorsement he purchased provided otherwise (reading the second sentence from paragraph 2 of Form 21, *supra*). American General objected to counsel for Buford interrogating Stone as to his opinion about matters of law "that the Court is going to decide."

At this point, the court announced that it was going to rule that art. 6.13 applied to the policy as written. Buford moved for an instructed verdict "on the question of law" as to the *contractual* damages of $75,000,"

leaving the only issues to be decided by the jury, as far as damages were concerned, as the amount of interest and punitive damages. The court stated that it was the basis for Buford's position "to simply take the *contractual* damages out of the law suit, the $75,000 as a valid [sic—the word was intended to be "valued"] policy. We would move for a directed verdict on that." Over the objections of the defendant, the court instructed a verdict. It was agreed that the jury would not be informed of the court's action.

The building sustained a total loss by fire. There was *no* finding by the court or jury as to Buford's damages. If the court's holding that the policy as written was a valued policy under art. 6.13 of the Insurance Code was correct, no such finding was necessary.

## DECISION

The sole issue in American General's appeal is whether, as a matter of law, Tex. Ins.Code Ann. art. 6.13 applies to the policy as written, *i.e.*, whether the policy in question was a "valued policy" under art. 6.13, entitling Buford to recover the full "Estimated Completed Cost" figures of $75,000 as shown in the Form 21 Builder's Risk portion of the policy.

Article 6.13 of the Code, printed on the Standard Fire Insurance portion of the policy as required by law, reads:

[P]olicy a Liquidated Demand. A fire insurance policy, in case of a total loss by fire of property insured, shall be held and considered a liquidated demand against the company *for the full amount of such policy* . . . .

(Emphasis added.)

Many other states have similar statutory provisions. In construing these statutes, the courts, including those of Texas, de-

---

**3.** Indeed, the Standard Fire Policy provides, in PART TWO, page 3:

Unless otherwise provided in writing added hereto, the company shall not be liable for loss occurring.

· · · · ·

(b) While a described building, whether intended for occupancy by owner or tenant, is *vacant beyond a period of thirty consecutive days.*

(Emphasis added.)

scribe a policy which meets the liquidated demand provision as a "valued policy." If the policy does not meet such provision it is called an "open policy." The definition and construction of policies, as to whether they are valued or open, has been aptly stated as follows:

A valued policy is one in which the measure of the property insured is agreed upon by both parties to the contract, so that in case of a total loss it is not necessary to prove the actual value. Indeed, it has been stated that it is the *uncertainty of the amount* which distinguishes an open from a valued policy. Such a valuation is in the nature of a contract for liquidated damages.

In determining whether a policy is open or valued, the contract must be viewed in its entirety, to give effect to the mutual intentions of the parties at the time of its execution [citing *Houston Fire & Cas. Ins. Co. v. Nichols*, 435 S.W.2d 140, 142 (Tex.1968) and *Perez v. Los Fresnos State Bank*, 512 S.W.2d 796, 801 (Tex. Civ.App.1974, no writ).] And the policy *must contain express language* showing such an intent before it will be deemed to be a valued policy. *So, a policy without the words "valued at" or other equivalent language is not valued.* But the policy is valued when a *definite amount is stipulated*, although another part of the policy *may provide that the loss shall be estimated at its actual cash value*, or that the insurance shall not exceed the *stipulated* sum.

\* \* \* \* \* \*

A policy which provides that the *subject matter is valued at the sum insured is a valued policy.*

6 J. Appleman, Insurance Law and Practice § 3827, at 246–47 (1972) (emphasis added) (footnotes omitted).

■ A "valued policy" is one in which the value of the property is *agreed on* by the parties so that in case of a total loss *it is not necessary to prove the actual val-*

ue. *Houston Fire & Casualty Insurance Co. v. Nichols*, 435 S.W.2d 140, 142 (Tex. 1968) (citing Appleman, *supra*).

Buford argues that all of the statutory requisites of art. 6.13, *supra*, are met in this case in that (1) the policy purchased by Buford is a fire insurance policy, (2) the loss was a total loss by fire, (3) the "full amount" of the policy is $75,000, (4) for which Buford made demand and proof of loss,[4] and (5) the replacement cost of the structure exceeded $75,000. He insists that the Legislature did not provide any exception to art. 6.13 and that there is no language in the statute that would indicate that a fire insurance policy with a "builder's risk" endorsement should be construed any differently from a fire policy without such endorsement. Moreover, he says, attempted stipulations to limit the application of art. 6.13 (and its predecessor, art. 4929) have been declared void. We agree with this last statement, where a fire policy is clearly a valued policy.

■ The flaw in Buford's argument is that he purchased a fire policy with Form 21 "Builder's Risk—Actual Completed Value Form" attached. Nowhere in the "Standard Fire Insurance" portion of the policy is there a stated, agreed-upon amount of insurance coverage. Rather, the policy holder is referred to the Form 21 "Builder's Risk—Completed Value" endorsement for such determination. Buford argues that the declarations and basic conditions of the Texas Standard Policy are in conflict with the builder's risk portion of the policy. We hold that such is not the case. In accordance with the general rule of contracts, all portions of a contract should be harmonized and given effect, if possible. *Brown v. International Service Insurance Company*, 449 S.W.2d 491, 492 (Tex. Civ.App.1969, writ ref'd n.r.e.). A rider attached to the policy merges into the policy and should be treated as a part of it. *French v. Insurance Company of North*

---

4. The proof of loss as submitted by Buford is not based on replacement value. In paragraph 6 thereof, Buford claims:

The actual Cash Value of said property at the time of loss was ... *$75,000.*

*America,* 591 S.W.2d 620, 621 (Tex.Civ. App.1979, no writ). When the provisions of the rider are more specific than those of the policy, the rider controls. *Drane v. Jefferson Standard Life Ins. Co.,* 139 Tex. 101, 161 S.W.2d 1057 (1942). Here, no amount of insurance is stated in the policy, *except* in Form 21, and there it is described as *"Estimated Completed Cost."*

▪ The builder's risk coverage in this policy is of the type described in Fire, Casualty & Surety Bulletins, Misc. Fire, Br–1 (1981):

> Builder's Risk Completed Value Form: Insurance is written for what the value of the building will be at the *time of completion,* and there is a reduction in premium rate to compensate for the fact that the face amount of insurance is *not at risk* during the *whole term* of the policy.

(Emphasis added.) The basis for calculating builder's risk premiums involving completed value form builder's risk insurance is one-half of the estimated completed value of the building. General Basic Schedules, Texas State Board of Insurance, p. 56–59 (1978).

In short, the only recitation as to the amount of coverage is an *estimated* completion cost. Texas courts have required, in order for a policy to be a valued policy within the meaning of art. 6.13, that an agreed definite amount must be stated. *See Houston Fire & Casualty Insurance Co. v. Nichols, supra.*

There is no ambiguity in the policy. Even if there were, the basis of the court's judgment is not that it resolved an ambiguity in favor of the insured, but that the policy was a *valued* policy, entitling Buford to $75,000 (the *estimated completed cost*) without *any* proof of value—actual cost, replacement cost or otherwise. In his brief, Buford refers to evidence on value heard *after* the court's instructed verdict. Such evidence bore on Buford's other causes of action for which no recovery was had because of jury findings against him.

Two Texas cases have considered policies identical to the one in the instant case. In *Republic Ins. Co. v. Hope,* 557 S.W.2d 603 (Tex.Civ.App.1977, no writ), a builder's risk Form 21 was attached to the Texas Standard Fire Policy. The Form 21 was identical to the one in this action, and recited that the "Estimated Completed Cost" of the structure was $27,000. The insured brought suit for losses suffered when vandals twice burglarized the house under construction, stealing tools, equipment and materials, and also damaging the structure. Also attached was a Form 148 (which arguably would exclude theft losses). Section 3 of Form 21, as here, provided coverage for "materials, equipment and supplies." The insured was awarded judgment in the amount of $2,961.59 for the damage repair and the value of the tools, materials and equipment stolen.

On appeal, the insurance company argued that, assuming the trial court construed the policy to be a "Builder's Risk" policy, then the basic policy was composed of the Texas Standard Forms *and* the builder's risk Form 21; that the *only* endorsement would be Form 148; and that although the builder's risk form provided coverage for theft "by implication," Form 148 specifically excluded theft coverage.

Affirming judgment for the insured, the court held:

> Where several instruments form one overall contract, the court will assume in its construction of the contract that the parties honestly intended the terms of the various instruments should be effective to accomplish their purposes, and will reconcile apparently conflicting provisions and give effect to all of them, if possible. *Guadalupe-Blanco River Authority v. City of San Antonio,* 145 Tex. 611, 200 S.W.2d 989, 1003 (1947). *Applying these rules, we construe the instruments in question to provide plaintiffs Builders' Risk coverage on the structure of the house at an increasing value as construction progressed until thirty days after construction was completed, under the Texas Standard Form*

*and the Builders' Risk Endorsement (Form No. 21). Then, once the house was completed and ready for occupancy (or occupied by plaintiffs or their tenant), plaintiffs were accorded coverage in the amount of $27,000 on the house under the Physical Loss Form (Form No. 148).* Although in Section V,G this endorsement expressly acknowledged plaintiffs' right to complete construction of the house after the effective date of the endorsement, theft from the structure while under construction was expressly excluded from its terms in Section II,F,2, in keeping with its basic purpose of providing insurance after completion of construction. However, such coverage was provided in the policy under the terms of the Builders' Risk endorsement (Form No. 21), in keeping with its basic purpose of providing insurance during construction. Additionally, this endorsement provided, in paragraph 3, indemnity for loss occasioned by theft of plaintiffs' materials, equipment, supplies, and tools located on the premises during construction.

Id. at 607 (emphasis added). *See also Donoho & Sons, Inc. v. Aetna Ins. Co.*, 598 S.W.2d 11, 13 (Tex.Civ.App.1980, writ ref'd n.r.e.).

Buford, by supplemental letter brief, cites the court to *Thompson v. Trinity Universal Insurance Co.*, 708 S.W.2d 45 (Tex.App.1986) (application for writ of error pending). In that case, Thompson was the sole owner of a corporation which owned 197 acres of land on Lake Palestine on which a "make believe western City," called Frontier City, was located. Though used as a resort in previous years, at the time of purchase many buildings had fallen into a hopeless state of disrepair. Still standing, however, was a building which formerly had been used as a hotel, but was in need of repair.

Thompson approached Evans, an insurance agent for Trinity, about insuring the hotel, and was told he could not insure the hotel until remodelling started. Once renovation began, Trinity issued a builder's risk policy in the amount of $100,000 (estimated completed cost) for a one-year period. Within this period, a fire completely destroyed the building and its contents.

Thompson notified Trinity's agent, who told him that the builder's risk policy covered materials and labor used in renovation, but *not* the building itself. Thompson sued. The jury found the actual cash value of the property destroyed to be:

1. Building—$35,000
2. Improvements to Building—$10,-899.17
3. Household goods stored—$650.00
4. Materials in building for making alterations, extensions and repairs—$440.00

The trial court entered judgment for $650.00 for household goods, and $11,-339.17, for improvements made and materials.

On appeal, Thompson contended that she was entitled to recover the additional sum of $35,000 for loss of the building. Trinity argued that the policy covered materials and labor that went into renovation, but not the building itself. Trinity also argued that the policy was ambiguous. In reviewing the judgment of the trial court, and holding that Thompson was entitled to recover $35,000 for loss of the building, the court held that there was *no* ambiguity in the Texas Standard Form policy and Texas Standard Form 21, attached thereto. In doing so, the court quoted portions of paragraphs 1 and 2 of Form 21, and held that:

The plain meaning of the provision cited is that the existing structure is covered by the policy. We see no other provisions within the policy which are inconsistent with our interpretation. Where the language of an insurance contract is plain, it must be enforced as made. *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex.1984); *Vanguard Ins. Co. v. Stewart*, 593 S.W.2d 736, 739 (Tex.Civ. App.1979), *aff'd*, 603 S.W.2d 761 (Tex. 1980).

and further:

Having found the building to be covered by the insurance policy, we hold that the

trial court should have allowed Thompson to recover the *actual cash value of the building as found by the jury*, in addition to the amount awarded by the judgment.

*Thompson v. Trinity Universal Insurance Co., supra*, at 47, 48 (emphasis added).

Buford should take no comfort from the *Thompson v. Trinity Universal* decision. Having found the policy, with Form 21 attached, to be unambiguous, *only* the cash value of the building was awarded; no assertion is to be found in the opinion that Thompson was entitled to the "Estimated Completed Value" of $100,000, on the basis that the policy was a valued policy.

Neither is the policy in the instant case ambiguous. The building was covered by the builder's risk endorsement at a value to be determined in accordance with the provisions of the policy. The basis of the trial court's judgment was that art. 6.13 of the Insurance Code, *supra*, mandated that Buford recover the full *"Estimated Completed Value"* of $75,000, without any proof of value though the building was not completed.

In citing *Thompson v. Trinity Universal*, Buford continues to argue that he "was entitled to the entire $75,000 since it would take more than $75,000 to *replace* the existing structure," forgetting that the sole basis of the judgment herein was that the policy was a *valued* policy in the amount of $75,000, requiring *no proof.* We may not render an advisory opinion on the true measure of damages. Buford says "replacement costs"; American General says "actual cash value."

Because the policy in question was not a valued policy, the judgment of the trial court is reversed and the cause is remanded for trial to determine the amount of the loss to which Buford is legally entitled. In view of our decision, we need not address Buford's cross-point.